COPY

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

VINH NGUYEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

RADIENT PHARMACEUTICALS CORPORATION, DOUGLAS C. MACLELLAN, and AKIO ARIURA,

Defendants.

CASE No.: SACV11-00406

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

JURY TRIAL DEMANDED

Plaintiff Vinh Nguyen, individually and on behalf of all other persons similarly situated, by their undersigned attorneys, allege in this Complaint the following upon knowledge with respect to their own acts, and upon facts obtained through an investigation conducted by their counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Radient Pharmaceuticals Corporation ("Radient" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; (d) information readily obtainable on the Internet; and (e) interviews of several witnesses with personal knowledge of the relevant facts.

1

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to defendants or are exclusively within their control.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than defendants, who purchased the common stock of Radient between January 18, 2011 and March 4, 2011, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of federal securities laws (the "Class").

**JURISDICTION AND VENUE**

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged herein, defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff Vinh Nguyen purchased Radient common stock during the Class Period as set forth in his certification, filed herewith, and has suffered damages as a result.

7. Radient engages in the research, development, manufacture, and marketing of diagnostic and skin care products. It offers Onko-Sure, a proprietary in-vitro diagnostic cancer test, which is used for the detection and/or monitoring of lung, breast, stomach, liver, colon, rectal, ovarian, esophageal, cervical, trophoblastic, thyroid, malignant lymphoma, and pancreatic cancers. During the Class Period Radient's common stock was actively traded on the AMEX, under ticker "RPC." At all relevant times, Radient had less than ten employees, and was headquartered in Tustin, CA.

8. Defendant Douglas C. MacLellan ("MacLellan"), at all relevant times herein was the Company's Chairman of the Board and CEO since 2008.

9. Defendant Akio Ariura ("Ariura"), at all relevant times herein was the Company's CFO since August 2006.

10. MacLellan and Ariura are collectively referred to hereinafter as the "Individual Defendants."

11. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f) approved or ratified these statements in violation of the federal securities laws.

12. As officers, directors and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the AMEX and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

13. Radient is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Radient under *respondeat superior* and agency principles.

### SUBSTANTIVE ALLEGATIONS

15. The Class Period begins on January 18, 2011 when the Company issued a materially false press release concerning the prestigious Mayo Clinic's involvement in a purported clinical trial of Onko-Sure. The press release states in relevant part:

> RADIENT PHARMACEUTICALS ANNOUNCES PROGRESS
> AND POTENTIAL COMPLETION DATE FOR ITS ONKO-SURE® CLINICAL STUDY
> (TUSTIN, CA) January 18, 2011/Marketwire: Radient Pharmaceuticals Corporation (NYSE Amex: RPC), a US-based company specializing in the research, development, and international commercialization of *In Vitro Diagnostic* cancer tests, **announced today**

**progress on its clinical study with Mayo Clinic ("Mayo") for the validation of the Company's US FDA cleared Onko-Sure®** *in vitro* **diagnostic (IVD) cancer test as a useful tool in the detection of colorectal cancer ("CRC") in all stages of CRC, especially early stages where effective diagnosis leads to better patient prognosis. Based on recent advancements, RPC anticipates it will complete the clinical trial with Mayo in the first quarter of 2011.**

**The clinical trial represents the largest study conducted to date for RPC's Onko-Sure® IVD cancer test. Approximately 1,000 colorectal patient samples with various disease stages are being tested in parallel by RPC and Mayo to directly compare the efficiency of the Onko-Sure® test with the Carcinoembryonic Antigen (CEA) test.** Patients with confirmed clinical diagnoses are tested across six clinically distinct patient groups that include: (1) Stage I colon cancer; (2) Stage II colon cancer; (3) Stage III colon cancer; (4) Stage IV colon cancer; (5) Control subjects, who are confirmed negative for colon cancer; and (6) Control subjects with benign polyps of the colon. Many distinct patient groups are included in the trial in order to add multiple layers of data and conclusions to the analyses.

Top line goals of the study include:(1) validation of the overall Efficiency of Onko-Sure® for the detection of colorectal cancer as compared with normal and benign controls; (2) an assessment of the efficiency of Onko-Sure® in each independent colorectal cancer stage; (3) an assessment of the overall efficiency of RPC's Onko-Sure® IVD test as compared with that of the CEA test; and (4) a comparison of the stage specific efficacy of Onko-Sure® versus CEA; especially early cancer stages. According to industry reports, CEA misdiagnoses a disproportionate number of early stage cancers. Physicians are unable to monitor 68 to 97% of biopsy positive patients, because their CEA values are below the manufacturer's cut-off.

Clinical data also confirms detecting cancer in earlier stages can lead to improved accuracy in the treatment, monitoring and recurrence monitoring of the disease in cancer patients According to the World Health Organization (WHO) cancer accounts for 7.4 million deaths (around 13 per cent of all deaths) worldwide every year, making it a leading cause of death globally. "We are proud to have reached this important milestone," commented Douglas MacLellan, Chairman and CEO of Radient Pharmaceuticals. "RPC's executive team has been aggressively cultivating relationships across a broad base of oncology and healthcare practitioners and the consistent feedback we've received regarding the long-term potential of Onko-Sure® test has been overwhelmingly positive. To have internationally recognized leaders in oncology take such great interest in Onko  Sure® is a testament to the importance of the test.  We believe these relationships and the results of the Mayo Clinic study will help to establish Onko-Sure as the new standard of care for monitoring CRC patients. "

RPC's Onko-Sure® IVD cancer test is a simple, non-invasive and regulatory-approved *in vitro diagnostic (IVD)* test used for the detection and monitoring of the treatment and/or recurrence of various types of cancer. The test enables physicians and healthcare professionals to effectively detect and/or monitor certain types of cancers by measuring the accumulation of Fibrin and Fibrinogen Degradation Products (FDP) in the blood. FDP

levels rise dramatically with the progression of cancer. Onko-Sure® is cleared by the US FDA for detection during colorectal cancer treatment and/or for recurrence monitoring in colorectal cancer patients and by Health Canada for the detection, treatment and/or recurrence monitoring of lung cancer. For more information visit **www.onko-sure.com**.

16. On the heels of the false press release, on January 31, 2011 the Company announced the signing of a definitive agreement for the private placement of $8.4 million convertible notes and warrants financing.

17. According to an article issued by the TheStreet.com on March 7, 2010, the Company's representations about the Mayo Clinic's purported involvement in the Onko-Sure clinical trial were materially false and misleading because: (1) the Mayo Clinic was not engaged in clinical studies with Radient; and (2) any clinical study results about Onko-Sure would be provided by Radient and not the Mayo Clinic. The article, states in relevant part:

> Mayo Clinic Denies Test Link to Radient Pharma
> Adam Feuerstein
> 03/07/11
>
> TUSTIN, Calif. (TheStreet) -- The Mayo Clinic is denying statements made by Radient Pharmaceuticals(RPC) about the prestigious research hospital's involvement in a clinical study of Radient's cancer-screening test Onko-Sure.
>
> "Mayo is not engaged in clinical studies with Radient and does not have a partnership agreement with Radient," Mayo Clinic spokesperson Kathy Anderson said in a statement emailed to TheStreet Friday.
>
> Mayo Clinic's statement contradicts Radient's recent pronouncements regarding the pending release of results from a new clinical validation study of Onko-Sure, a blood-based cancer screening test. Questions about the exact nature of the relationship between Radient and Mayo come a week after similar doubts were raised about an Onko-Sure venture in India touted by Radient.
>
> In a press release issued Jan. 18, Radient said it was making "progress on its clinical study with Mayo Clinic for the validation of the company's US FDA-cleared Onko-Sure" test. Results from this study are expected before the end of the first quarter.
>
> The same Radient press release described the Onko-Sure clinical study as one in which "1,000 colorectal patient samples with various disease stages are being tested in parallel by RPC [Radient] and Mayo..."

Onko-Sure is a blood-based test cleared for use in the U.S. to measure the progression of colon cancer in patients already diagnosed with the disease. Despite FDA approval, Radient has failed to generate significant revenue from Onko-Sure, placing the company's financial health in severe jeopardy.

Radient is hoping that results from this new study will generate interest and sales of Onko-Sure to oncologists. Radient's moribund stock price is in desperate need of a revamp too, so invoking the imprimatur of Mayo Clinic has been a prominent part of the company's public relations strategy. But in linking Mayo Clinic to Onko-Sure, Radient appears to be exaggerating the research hospital's involvement and interest.

In order to conduct the Onko-Sure study, Radient needed blood samples taken from patients with colon cancer, so the company turned to a subsidiary of Mayo that collects and stores tissue and blood samples for use in scientific research. The Mayo Clinic subsidiary sold the blood samples to Radient.

"Mayo Clinic does have a collaboration agreement with Radient whereby Mayo Validation Support Services provided bio specimens from our Bio Specimen Bank to Radient for clinical studies," said Mayo spokesperson Anderson.

"The services Mayo was required to provide to Radient have been fulfilled. Any clinical study results about Onko-Sure would be provided by Radient, not Mayo Clinic," she added.

Radient was informed of Mayo's statement regarding the Onko-Sure clinical study but a spokesperson for the company declined to answer questions or comment.

In the area of new colon cancer-screening tests, Mayo Clinic is much more directly involved with work being conducted by Exact Sciences(EXAS).

Last year, Exact Sciences and researchers at Mayo conducted a clinical validation study of a new gene-based screening test for early-stage colon cancer. The Mayo Clinic's Dr. David Alquist presented results from that study at a medical meeting last fall. Exact Sciences and Mayo Clinic have an ongoing collaboration to develop this new colon-cancer screening test, which has showed potential to be one of the first non-invasive cancer diagnostics to detect accurately colon cancer at its earliest and most treatable stages.

18.     Following this news, on March 7, 2011, the Company's stock price fell over $.15 cents per share, or 26%, from its prior closing price of $.57 per share, on extraordinary volume. That same day, the Company's stock was halted. (It resumed trading the following day.)

19. Not surprisingly, as of March 9, 2011, the January 18, 2011 press release was removed from the Company's website.

## **NO SAFE HARBOR**

20. The statutory safe harbor provided for certain forward-looking statements does not apply to any of the false statements alleged in this Complaint. None of the statements alleged herein are "forward-looking" statements and no such statement was identified as a "forward-looking statement" when made. Rather, the statements alleged herein to be false and misleading all relate to facts and conditions existing at the time the statements were made. Moreover, cautionary statements, if any, did not identify important factors that could cause actual results to differ materially from those in any forward-looking statements.

21. In the alternative, to the extent that the statutory safe harbor does apply to any statement pleaded herein which is deemed to be forward-looking, the Individual Defendants are liable for such false forward-looking statements because at the time each such statement was made, the speaker actually knew and/or recklessly disregarded the fact that such forward-looking statements were materially false or misleading and/or omitted facts necessary to make statements previously made not materially false and misleading, and/or that each such statement was authorized and/or approved by a director and/or executive officer of Radient who actually knew or recklessly disregarded the fact that each such statement was false and/or misleading when made. None of the historic or present tense statements made by the Individual Defendants was an assumption underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such an assumption underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Individual Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## LOSS CAUSATION/ECONOMIC LOSS

22. During the Class Period, the Individual Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Radient's stock price and operated as a fraud or deceit on purchasers of Radient stock by misrepresenting the Company's business. Once the Individual Defendants' misrepresentations and fraudulent conduct were disclosed to the market, Radient's stock price reacted negatively as the artificial inflation was removed from it. As a result of their purchases of Radient stock during the Class Period, Plaintiff and other members of the Class suffered economic loss.

23. The Individual Defendants' false and misleading statements had the intended effect and caused Radient stock to trade at artificially inflated levels throughout the Class Period.

24. As investors and the market became aware of Radient's prior misstatements and omissions and that Radient's actual financial condition and business prospects were, in fact, not as represented, Radient's stock price reacted negatively, damaging investors.

**Applicability of Presumption of Reliance:
Fraud-on-the-Market Doctrine**

25. At all relevant times, the market for Radient's common stock was an efficient market for the following reasons, among others:

(a) Radient's stock met the requirements for listing, and was listed and actively traded on the AMEX, a highly efficient and automated markets;

(b) During the class period, on average millions of shares of Radient's stock were traded on a weekly basis, demonstrating a very strong presumption of an efficient market;

(c) As a regulated issuer, Radient filed with the SEC periodic reports during the Class Period;

(d) During the Class Period, Radient was eligible and did file short-form registration statements with the SEC;

Class Action Complaint for Violation of the Federal Securities Laws

(e) Radient regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(f) Radient was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(g) Numerous NASD member firms were active market-makers in Radient stock at all times during the Class Period; and

(h) Unexpected material news about Radient was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

26. As a result of the foregoing, the market for Radient's common stock promptly digested current information regarding Radient from all publicly available sources and reflected such information in Radient's stock price. Under these circumstances, all purchasers of Radient's common stock during the Class Period suffered similar injury through their purchase of Radient's common stock at artificially inflated prices, and a presumption of reliance applies.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Radient during the Class Period and who were damaged thereby. Excluded from the Class are defendants, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Radient's common stock was actively traded on the AMEX. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Radient or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

29. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) whether the federal securities laws were violated by defendants' acts as alleged herein;

    (b) whether the misstatements and omissions alleged herein were made with scienter;

    (c) whether statements made by the Individual Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business, prospects, and operations of Radient; and

    (d) to what extent the members of the Class have sustained damages and the proper measure of damages.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### FIRST CLAIM

**Violation of Section 10(b) of
The Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34. This First Claim is asserted against defendants Radient, and the Individual Defendants.

35. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Radient common stock at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, individually and as a group, took the actions set forth herein.

36. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Radient as specified herein.

37. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Radient's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Radient and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Radient's common stock during the Class Period.

38. Each of the Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of the Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of the Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; (4) each of the Defendants was aware of the Company's dissemination of information to the investing public that they knew or recklessly disregarded was materially false and misleading; and (5) each of the Defendants culpably participated in the wrongful conduct alleged herein.

39. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Radient's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

40.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Radient's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Radient's publicly-traded common stock were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the Company's common stock trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired and/or sold Radient common stock during the Class Period at artificially high prices and were damaged thereby.

41.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Radient's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Radient common stock, or, if they had acquired such

common stock during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

42. By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

43. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

44. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

**Violation Of Section 20(a) of
The Exchange Act Against the Individual Defendants**

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. This Second Claim is asserted against each of the Individual Defendants.

47. The Individual Defendants acted as controlling persons of Radient within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these

statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

48.   In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

49.   As set forth above, Radient violated Section 10(b) and Rule 10b-5. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

50.   This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 11, 2010                    Respectfully submitted,

                                           **THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

COPY

Name & Address:
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Tel.: (213) 785-2610; Fax: (213) 226-4684

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINH NGUYEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFF(S) <br><br> v. <br><br> RADIENT PHARMACEUTICALS CORPORATION, DOUGLAS C. MACLELLAN, and AKIO ARIURA, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **SACV 11-00406 DOC(MLGx)** <br><br><br> SUMMONS <br><br> BY FAX |

TO:   DEFENDANT(S): _____
_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __Laurence M. Rosen, Esq.__, whose address is __333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071__. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __March 11, 2011__       By: __A. DeAvila__
                                    Deputy Clerk

                                    (Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

CV-01A (12/07)                    SUMMONS