**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

Case No: SA CV 11-0406 DOC (MLGx)                 Date: October 26, 2011

Title: VINH NGUYEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED v. RADIENT PHARMACEUTICALS CORPORATION, DOUGLAS C. MACLELLAN, and AKIO ARIURA

DOCKET ENTRY
     [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]

Date:_____     Deputy Clerk: _____

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

    JULIE BARRERA                        Not Present
Courtroom Clerk                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                        NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

      Before the Court is Defendant Douglas C. MacLellan ("MacLellan") and Akio Ariura's ("Ariura") (jointly, "Individual Defendants") Motion to Dismiss Plaintiffs' Amended Complaint ("Motion to Dismiss") (Docket 19) in the above-captioned case. The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After considering the moving, opposing and replying papers, and for the reasons discussed below, the Court hereby GRANTS IN PART AND DENIES IN PART the Motion to Dismiss.

      **I.**      **BACKGROUND**

     Lead Plaintiffs Reydel Quintana, Dat Tan Tran, and Agnes Cho bring this federal

securities class action on behalf of all persons and entities who purchased the common stock of Defendant Radient Pharmaceuticals Corporation ("Radient") from January 18, 2011 through March 4, 2011 (the "Class Period") (collectively, "Plaintiffs"). Amended Complaint ("Amd. Cmpl."), ¶ 1. The action is brought against Radient, Douglas C. MacLellan ("MacLellan"), and Akio Ariura ("Ariura") (collectively, "Defendants"). Radient is a small pharmaceutical company whose main business is the research, development, manufacturing and sale of its primary product, Onko-Sure, a U.S. Food and Drug Administration ("FDA") approved In-Vitro Diagnostic Cancer Test. Id. at ¶¶ 2-3. Since 2008, MacLellan was Radient's Chairman of the Board and CEO and, since August 2006, Ariura was Radient's CFO. Id. at ¶¶ 28-29.

Since at least the early 1980's, Onko-Sure has allegedly competed with the industry standard, the Carcinoembryonic Antigen marker test (the "CEA"). Id. at ¶ 3. Radient's efforts to convince medical practitioners and institutions to utilize Onko-Sure, instead of the CEA, have allegedly been a slow and expensive process. Id. at ¶ 4. Radient's reported revenue for the 2010 fiscal year was $231,662, its operating expenses were over $14 million, and its net loss was $85,711,853. Id. at ¶ 5. Radient allegedly acknowledged in its SEC filings that its ability to continue operations was dependent upon raising additional capital. Id. at ¶ 6. In short, Plaintiffs aver that, in the time leading up to the Class Period, Radient was desperate for operating cash. Id. at ¶ 9.

Additionally, Plaintiffs claim that, in the time leading up to the Class Period, Radient was also engaged in litigation with investors for either being in default or breach of its financing obligations. Id. at ¶ 11. On June 11, 2010, Hudson Bay Fund, L.P. allegedly sued Radient in connection with its purchase of Convertible Promissory Notes. Id. Whalehaven Capital and Alpha Capital Anstalt also allegedly commenced suit against Radient, on December 21, 2010, for failing to increase the number of shares covered by the warrants issued to those entities as a result of Radient's decreasing stock price. Id. Therefore, Plaintiffs allege that, in the time leading up to the Class Period, Radient's stock price declined and its financing costs increased, including its ongoing obligations to pay interest and issue additional stock to existing investors. Id. Accordingly, Plaintiffs claim that Radient was under intense pressure to prevent any further stock price declines. Id.

Plaintiffs argue that, against this backdrop, on January 18, 2011, Defendants issued a materially false and misleading press release stating that Radient and the prestigious Mayo Clinic were conducting a clinical trial together for Onko-Sure and that the Mayo Clinic and Radient would jointly provide clinical study results. Id. at ¶¶ 12, 35-36.[1] Plaintiffs aver that Defendants intentionally misled

---

[1] The allegedly misleading press release states in relevant part:

RADIENT PHARMACEUTICALS ANNOUNCES PROGRESS AND POTENTIAL COMPLETION DATE FOR ITS ONKO-SURE® CLINICAL STUDY

TUSTIN, CA – 1/18/11 – Radient Pharmaceuticals Corporation [. . .] announced

investors to believe that it was conducting its clinical trial with the Mayo Clinic because: (1) Defendants wanted to attach greater prestige, importance, and a higher likelihood of success to the Onko-Sure clinical trial in an effort to inflate its stock price and (2) Defendants believed such a trial would help raise additional financing. *Id*. at ¶¶ 13, 37. Plaintiffs claim that just twelve days after the press release, on January 30, 2011, Radient successfully raised additional financing when it completed its largest offering ever. *Id*. at ¶ 14. Specifically, Radient received $6.73 million in proceeds when it signed a definitive agreement for the private placement of $8.4 million in Convertible Promissory notes. *Id*.

Plaintiffs allege that the press release was materially false and misleading because, according to an article issued by Thestreet.com on March 7, 2011: (1) the Mayo Clinic did not have a partnership agreement with Radient; (2) the Mayo Clinic was not engaged in clinical studies with Radient; (3) the Mayo Clinic was not to provide any clinical study results about Onko-Sure; and (4) the Mayo Clinic's only relationship with Radient was a contract between Radient and a subsidiary of the Mayo Clinic that sold blood and tissue samples for Radient's clinical trial.[2] *Id*. at ¶ 15. Plaintiffs aver

---

today progress on its clinical study with Mayo Clinic ("Mayo") [. . .] Based on recent advancements, RPC anticipates it will complete the clinical trial with Mayo in the first quarter of 2011.

The clinical trial represents the largest study conducted to date for RPC's Onco-Sure® Cancer test. Approximately 1,000 colorectal patient samples with various disease stages are being tested in parallel by RPC and Mayo [. . . ]

Commenting in the press release, MacLellan is quoted as follows in the announcement:

"We look forward to the long-term and positive impact these relationships and results of the Mayo study can potentially have [. . .]"

[2] Thestreet.com article states in relevant part:

Mayo Clinic Denies Test Link to Radient Pharma
Adam Feuerstein
03/07/11

"The Mayo Clinic is denying statements made by Radient [. . .] about the prestigious research hospital's involvement in a clinical study of Radient's cancer-screening test Onko-Sure.

'Mayo is not engaged in clinical studies with Radient and does not have a partnership Agreement with Radient,' Mayo Clinic spokesperson Kathy Anderson

that the adverse news that the Mayo Clinic was not conducting a clinical trial with Radient caused Radient's stock to drop dramatically.[3] *Id*. at ¶¶ 16, 40.

On March 11, 2011, a copy of the Complaint was filed in this Court (Docket 1). Plaintiffs filed the Amd. Cmpl. (Docket 14), on July 8, 2011, alleging two causes of action: (1) violation of section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against all defendants and (2) violation of section 20(a) of the Exchange Act against MacLellan and Ariura. On August 5, 2011, Moving Defendants MacLellan and Ariura brought the instant Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for failure to satisfy the heightened pleading requirements of Fed R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc*., 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint

---

said [. . .]

'Mayo Clinic does have a collaboration agreement with Radient whereby Mayo Validation Support Services provided bio specimens from our Bio Specimen Bank to Radient for clinical studies, said Mayo spokesperson Anderson.'"

[3] The Court GRANTS Plaintiffs' Request for Judicial Notice of Radient's historical daily stock price range from Bloomberg LP during the Class Period.

'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)'." *Id*.

Additionally, fraud claims must be pled with more particularity than other claims. Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Rule 9(b) therefore requires that allegations of fraud identify the parties to the misrepresentation such that each defendant is on notice of what specifically they are accused of. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

Furthermore, through the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress has imposed heightened pleading standards on securities fraud actions. 15 U.S.C. §§ 78u-4(b)(1), (2). "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002) (citing *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)). "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'" *Id.* at 1084-85 (citing *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999)). To meet this heightened pleading requirement, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at 1085 (citing 15 U.S.C. §§ 78u-4(b)(1)).

The second requirement of the PSLRA is that the complaint must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Id.* (citing 15 U.S.C. §§ 78u-4(b)(2)) (emphasis added). The Ninth Circuit has interpreted the scienter pleading requirement as meaning that plaintiffs "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Silicon Graphics*, 183 F.3d at 974. The *Silicon Graphics* court further clarified that "recklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." *Id.* at 977. The requisite recklessness must be an "extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers that is either known to the defendant or so obvious that the actor must have been aware of it." *Id.* at 984. A plaintiff cannot proceed on pleadings averring scienter based on mere "motive and opportunity" but instead must "state specific facts indicating no less than a degree

of recklessness that strongly suggests actual intent." *Id.* at 979. Finally, under the PSLRA "when determining whether plaintiffs have shown a strong inference of scienter, the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III.  DISCUSSION

Individual Defendants MacLellan and Ariura move the Court to dismiss Plaintiffs' section 10(b) and section 20(a) claims against them because the Amd. Cmpl. fails to satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA. Motion to Dismiss, 4.

#### A.  First Claim: Section 10(b) and Rule 10b-5

The Supreme Court has enumerated the following elements of a cause of action for securities fraud arising under section 10(b) and rule 10b-5:

> (1) *a material misrepresentation (or omission)*, see Basic Inc. v. Levinson, 485 U.S. 224, 231-232 (1988);
>
> (2) *scienter*, *i.e.*, a wrongful state of mind, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197-199 (1976);
>
> (3) *a connection with the purchase or sale of a security, see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-731 (1975);
>
> (4) *reliance*, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation,' *see Basic*, 485 U.S. at 248-249 (nonconclusively presuming that the price of a publicly traded share reflects a material misrepresentation and that plaintiffs have relied upon that misrepresentation as long as they would not have bought the share in its absence);
>
> (5) *economic loss*, 15 U.S.C. § 78u-4(b)(4); and
>
> (6) '*loss causation*,' *i.e.*, a causal connection between the material misrepresentation and the loss, [15 U.S.C. § 78u-4(b)(4)]; cf. T. Hazen,

Law of Securities Regulation, §§ 12.11[1], [3] (5th ed. 2005).

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005).

Individual Defendants challenge the material misrepresentation (or omission), scienter, and loss causation elements of section 10(b). Motion to Dismiss, 9-18. Accordingly, the sufficiency of each element at issue is discussed, in turn, below.

### 1. Material Misrepresentation (or Omission)

Plaintiffs assert that: (1) Radient issued a materially false press release concerning a "clinical trial" or "clinical study" for Onko-Sure that Radient claimed it was conducting with the Mayo Clinic; (2) MacLellan trumpeted that the clinical trial was a "milestone" and stated that the company looked forward to the long term and positive impact that the results of the "Mayo study" could potentially have; and (3) the statements made were materially false and misleading because there was no "Mayo study." Amd. Cmpl. at ¶¶ 35-37. As stated above, under Rule 9(b) and the PSLRA, falsity must be pled with particularity. Fed. R. Civ. P. 9(b); *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1084 (citing *Ronconi v. Larkin*, 253 F.3d at 429). To meet the PSLRA's heightened pleading requirement, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at 1085 (citing 15 U.S.C. §§ 78u-4(b)(1)).

Plaintiffs' allegations with respect to MacLellan suffice to meet Rule 9(b) and the PSLRA's heightened pleading standards, as Plaintiffs have specified which statements are misleading and the reasons why those statements are misleading. *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1084 (citing *Ronconi v. Larkin*, 253 F.3d at 429)). Plaintiffs have used specific facts and independent evidence to identify the false statements, when they were made and by whom, and why they were misleading. Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss ("Opposition") (Docket 22), ¶ 7. Specifically, Plaintiffs allege that MacLellan misleadingly referred to Radient's clinical study as the "Mayo study." Amd. Cmpl. at ¶¶ 35-36. Plaintiffs aver that MacLellan's statement was materially false and misleading because there was no "Mayo study." *Id.* at ¶ 37. In fact, Plaintiffs specifically claim that: (1) the Mayo Clinic was not engaged in clinical studies with Radient; (2) the Mayo Clinic was not to provide any clinical study results for Onko-Sure; (3) the Mayo Clinic did not have any partnership agreement with Radient; and (4) the Mayo Clinic's sole tie to Radient was that a Mayo Clinic sold blood samples to Radient for use in its clinical study. *Id.* at ¶ 38. Therefore, Plaintiffs have sufficiently alleged that MacLellan made a material misrepresentation.

Plaintiffs' allegations with respect to Ariura, however, fail to meet Rule 9(b) and the PSLRA's heightened pleading standards, as Plaintiffs have failed to specify which statements are misleading and the reasons why those statements are misleading. *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1084 (citing *Ronconi v. Larkin*, 253 F.3d at 429). Instead, Plaintiffs allege that Ariura signed a

collaboration agreement that allegedly relates to the January 18, 2011 press release. Opposition, 8. This allegation falls short of sufficiently pleading that Ariura made a material misrepresentation or omission. Not only does the Amd. Cmpl. fail to allege that Ariura made a material misrepresentation or omission, but it fails to satisfactorily allege that Ariura was responsible for any statement at all. The Amd. Cmpl. appears to allege that Ariura was responsible for the press release, and the allegedly misleading statements within it, by virtue of his position as Radient's CFO and his access to Radient's private information. Amd. Cmpl. ¶¶ 29, 31-34. For example, Plaintiffs claim that each of the Individual Defendants was privy to confidential proprietary information concerning Radient and each of the Individual Defendants was involved in the drafting, producing, reviewing, and/or dissemination of the allegedly false and misleading statements. *Id*. at ¶ 31.

However, courts have held that this "group-pleading" no longer applies since the passage of the PSLRA. *In re Amgen, Inc. Sec. Litig.*, 544 F.Supp.2d 1009, 1036 (C.D. Cal. 2008). In *In re Amgen, Inc. Sec. Litig.*, plaintiffs' group pleading included allegations that individual defendants "participated in drafting, preparing, and/or approving the public reports and other statements and communications complained of." 544 F.Supp.2d at 1035. The court held that, having concluded that the group pleading doctrine is no longer viable, plaintiffs failed to state claims as to the individual defendants because plaintiffs did not allege sufficient facts to show that each individual defendant was responsible for making one of the challenged statements. *Id*. at 1035-1036. Like the plaintiffs in *In re Amgen, Inc. Sec. Litig.*, Plaintiffs' allegations concerning Ariura referred to Individual Defendants jointly. Therefore, Plaintiffs have failed to sufficiently allege a material misstatement, which is a required element of a section 10(b) and rule 10b-5 claim, with respect to Ariura. Accordingly, the Court finds any further analysis on this claim, with respect to Ariura, unnecessary.

### 2. Scienter

Plaintiffs aver that, viewed holistically, the Amd. Cmpl. sufficiently alleges that MacLellan acted with scienter. Opposition, 13-17. As discussed earlier, the PSLRA requires a plaintiff to state with particularity facts giving rise to a strong inference that a defendant acted with the required state of mind. *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1085. It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 314 (2007). To qualify as a "strong" inference, an inference of scienter must be "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. Indeed, to determine whether a plaintiff's allegations of scienter can survive the threshold inspection for sufficiency, a court must consider not only the inferences urged by the plaintiff, but also competing inferences rationally drawn from the facts alleged. *Id*. Finally, a plaintiff cannot proceed on pleadings averring scienter based on mere "motive and opportunity" but instead must "state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Silicon Graphics*, 183 F.3d at 979.

Plaintiffs' Amd. Cmpl. satisfies the heightened pleading requirements of the PSLRA for scienter with respect to MacLellan. Courts have held that a demonstration of a desire to raise company financing, combined with the "red flags" of a company's financial condition, is sufficient to plead scienter. For example, the court in *Howard v. Everex Systems*, *Inc.* found that plaintiff had sufficiently made out a prima facie case of defendant officer's scienter. 228 F.3d 1057 (9th Cir. 2000). In *Howard*, the plaintiff alleged that the company and its CEO/Chairman of the Board artificially inflated the price of the company's stock by falsely representing that the company had achieved profitability and consecutive profit increases during the first three quarters of the 1992 fiscal year. 228 F.3d at 1059. The plaintiff claimed that the misrepresentations were made to secure bank financing, to conceal alleged violations of a loan covenant, and to artificially inflate the price of the company's stock. *Id*. at 1060. The court concluded that the "demonstration of [the CEO/Chairman of the Board's] possible motive, combined with the red flags of [the company's] financial condition, [were] sufficient" to plead scienter. *Id*. at 1063. The court emphasized the following: (1) the company had a motive to overstate its net value to avoid violating certain loan covenants; (2) the company's executives recognized that the company's cash flow and existing lines of credit were potentially inadequate to fund the company's fiscal 1992 business plan; and (3) in order for the company to meet its optimistic projections, additional funding needed to be raised. *Id*.

Although the Court recognizes that *Howard* was decided at the summary judgment stage of litigation, the Court finds that the logic of *Howard* is still instructive in this case, as the facts here are similar. Here, Plaintiffs have sufficiently alleged that MacLellan possessed the requisite level of scienter. Radient's reported revenue for the 2010 fiscal year was $231,662, while its operating expenses were over $14 million and its net loss was $85,711,853. Amd. Cmpl. at ¶ 5. Therefore, Plaintiffs alleged that, in the time leading up to the Class Period, Radient was desperate for operating cash. *Id*. at ¶ 9. Further, Plaintiffs claimed that Radient's ability to continue operating was dependent upon raising additional capital. *Id*. at ¶ 6. This situation is similar to *Howard*, where the company's executives recognized that the company's financial situation was potentially inadequate to fund the company's business plan and, that in order to meet optimistic projections, additional funding needed to be raised. As Radient's CEO and Chairman of the Board, MacLellan was surely aware of Radient's dire financial situation and would, potentially, have motive to raise funding to allow Radient to continue operating. Moreover, Radient was allegedly engaged in litigation and under intense pressure to prevent any further stock price declines. *Id*. at ¶ 9. Accordingly, Plaintiffs aver that MacLellan intentionally misled investors to believe that Radient was conducting its clinical trial with the Mayo Clinic because MacLellan wanted to create a higher likelihood of success to the Onko-Sure clinical trial to inflate Radient's stock price and MacLellan believed such a trial would help raise additional financing. *Id*. at ¶ 37.

Additionally, courts have generally held that motive and opportunity alone are insufficient to show scienter at the pleading stage, but they may still be considered as circumstantial evidence of such. *Silicon Graphics*, 183 F.3d at 979. Here, MacLellan potentially had motive to mislead investors into believing that Radient was conducting its clinical trial with the Mayo Clinic. Like the CEO/Chairman of the Board in *Howard*, who recognized that the company's business plan may have

been inadequately funded and that additional funding needed to be raised to meet optimistic projections, as Radient's CEO/Chairman of the Board, MacLellan recognized that Radient was desperate for operating cash and that its ability to continue operating was dependent upon raising additional capital. This possible motive, combined with the "red flags" of Radient's financial condition, are sufficient to establish the requisite level of scienter. *Howard*, 228 F.3d at 1063.

Considering *all* reasonable inferences to be drawn from the allegations, Plaintiffs' allegations are sufficient to allow a strong inference of scienter with respect to MacLellan. *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

### 3. Loss Causation

Individual Defendants aver that Plaintiffs failed to adequately plead loss causation. Motion to Dismiss, 14. To successfully plead loss causation, a plaintiff must demonstrate a causal connection between the deceptive acts that form the basis of the complaint and the injury suffered by the plaintiff. *In re Gilead*, 536 F.3d 1049, 1054 (9th Cir. 2008). The misrepresentation need not be the sole reason for the decline in value of the securities, but it must be a "substantial cause." *Id*. Moreover, courts have found that it is normally inappropriate to rule on loss causation at the pleading stage. *Id*. at 1057. So long as the complaint alleges facts that plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate. *Id*. This is not a "probability requirement . . . it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" loss causation. *Id*. (citing *Bell Atl.*, 127 S. Ct. at 1965). For example, in *In re Gilead,* a biopharmaceutical company's fortunes depended heavily on the success of one of the company's drugs. 536 F.3d at 1050. Plaintiffs alleged that the company misled the investing public by representing that the demand for the drug was strong without disclosing that unlawful marketing was the cause of that strength. *Id*. at 1052. Plaintiffs claimed that a drop in the company's stock price was caused by the company's disclosure of an FDA warning letter that discussed the unlawful marketing. *Id*. at 1058. The court found that plaintiffs had sufficiently alleged a causal relationship between the company's misrepresentations and the drop in the company's stock price. *Id*.

Plaintiffs have sufficiently pled loss causation with respect to MacLellan's allegedly misleading statements. Plaintiffs allege that Radient's stock price fell following the March 7, 2011 article posted on Thestreet.com, which revealed the alleged falsity of the January 18, 2011 press release that touted the Mayo Clinic's purported involvement in the Onko-Sure clinical study. Amd. Cmpl. at ¶ 40. Like *In re Gilead*, where the court found that plaintiffs had alleged a sufficient causal relationship between the company's misrepresentations regarding the demand for its drugs and the subsequent drop in the company's stock price following the disclosure of the FDA warning letter, Plaintiffs have sufficiently alleged a causal relationship between MacLellan's misleading statement and the subsequent drop in Radient's stock price when the alleged falsity of such statement was revealed.

Accordingly, the Court GRANTS Individual Defendants' Motion to Dismiss Plaintiffs'

section 10(b) claim with respect to Ariura. The Court DENIES Individual Defendants' Motion to Dismiss Plaintiffs' section 10(b) claim with respect to MacLellan.

### B. Second Claim: Control Person Liability under Section 20(a)

Plaintiffs next allege that Individual Defendants acted as "Control Persons" of Radient within the meaning of Section 20(a) of the Exchange Act. Amd. Cmpl. at ¶ 67.[4] Section 20(a) provides that:

> "Every person who, directly or indirectly, controls any person liable under any provision of this title [. . .] shall also be liable jointly and severally with and to the extent as such controlled person to any person to whom such controlled person is liable . . . ." 15 U.S.C.S. § 789(a).

Thus, a successful prima facie case under Section 20(a) alleges (1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator. *Howard*, 228 F.3d at 1065. As the Court has already found that Plaintiffs have adequately pled a violation of 10(b) and Rule 10b-5 with respect to Radient, Plaintiffs have satisfied the first element of a section 20(a) claim (Docket 29). Accordingly, only the sufficiency of the second element of a section 20(a) claim is discussed below.

#### 1. Pleading Standard

The Court applies the pleading standards of Fed. R. Civ. P. 8(a) to Plaintiffs' control person allegations, as opposed to the more demanding standard of Fed. R. Civ. P. 9(b). Although there exists some low-level disagreement on whether this is the appropriate standard, the weight of recent case law indicates that it is. In any event, the Court concludes that the line of cases applying Rule 8(a) to control person allegations is better reasoned than the line of cases to the contrary. *See Teamsters Local 617 Pension and Welfare Funds v. Apollo Group*, 690 F.Supp. 2d 959, 965-72 (providing an in-depth discussion of the relevant cases).

#### 2. Factual Sufficiency

As explained above, a successful prima facie case under section 20(a) must allege that the defendant exercised actual power or control over the primary violator. *Howard*, 228 F.3d at 1065. The determination of who is a controlling person is "an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to

---

[4] Although the Court has dismissed Plaintiffs' first claim with respect to Individual Defendant Ariura, the dismissal of that claim does not preclude Ariura from potential control person liability. Accordingly, the Court's analysis of Plaintiffs' second claim pertains to both Individual Defendants.

control corporate actions." *Id*. For example, in *In re Amgen, Inc. Sec. Litig.,* plaintiffs alleged that individual defendants held positions of control and that they participated in "drafting, preparing, and/or approving" of the statements and communications complained of, were able to and did control the content of various SEC filings, press releases, and other public statements pertaining to the Company, and were acting on behalf of the Company "in the regular course of business." 544 F.Supp.2d at 1009. The court found that these allegations were sufficient to satisfy the second element of a section 20(a) claim against the individual defendants. *Id*.

Plaintiffs alleged that Individual Defendants: (1) directly participated in Radient's management and had the power to influence and control; (2) were directly involved in Radient's day-to-day operations at the highest level; (3) were privy to confidential proprietary information concerning Radient's business and operations; (4) were involved in the drafting, producing, reviewing, and/or dissemination of the allegedly false and misleading statements; and (5) approved or ratified the allegedly false and misleading statements. Amd. Cmpl. at ¶¶ 31, 67. These allegations are sufficient to support an inference that Individual Defendants controlled Radient and its operations. Like *In re Amgen*, where plaintiffs alleged that individual defendants held positions of control and participated in the drafting, preparing, and/or approving of the statements complained of, Plaintiffs have also alleged that Individual Defendants had power to influence and control and were involved in the drafting, producing, reviewing, and/or disseminating of the allegedly false and misleading statements. Further, a plaintiff need not show that the defendant was a culpable participant in the wrongful conduct or exercised actual power to be derivatively liable under section 20(a). *Howard*, 228 F.3d at 1065. The Individual Defendants are free to later assert a "good faith" defense at a later stage of the proceedings. *Id*. Accordingly, the Court DENIES Individual Defendants' Motion to Dismiss Plaintiffs' section 20(a) claim.

## IV.   DISPOSITION

For the reasons explained above, Moving Defendants MacLellan and Ariura's Motion to Dismiss is GRANTED in part and DENIED in part.

The Court GRANTS dismissal as to Plaintiffs' Section 10(b) and Rule 10b-5 claim with respect to Defendant Ariura. This claim is DISMISSED WITH LEAVE TO AMEND.

The Court DENIES the Motion to Dismiss as to Plaintiffs' Section 10(b) and Rule 10b-5 claim with respect to Defendant MacLellan. The Court DENIES the Motion to Dismiss as to Plaintiffs' Section 20(a) claims as to Defendant MacLellan and Defendant Ariura.

Plaintiffs may file an amended complaint by November 21, 2011.

The Clerk shall serve this minute order on all parties to the action.