1  Laurence M. Rosen, Esq. (SBN 219683)
   THE ROSEN LAW FIRM, P.A.
2  355 South Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
   Telephone: (213) 785-2610
4  Facsimile: (213) 226-4684
5  Email: lrosen@rosenlegal.com

6
   Counsel for Lead Plaintiffs and the Class
7

8            UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
9                 SOUTHERN DISTRICT

10

11 VINH NGUYEN, INDIVIDUALLY AND        No. CV 11-0406-DOC (MLGx)
12 ON BEHALF OF ALL OTHERS
   SIMILARLY SITUATED,                  CLASS ACTION
13

14        Plaintiff,                    MEMORANDUM OF POINTS
15                                       AND AUTHORITIES IN
   vs.                                   SUPPORT OF MOTION FOR
16                                       CLASS CERTIFICATION

17 RADIENT        PHARMACEUTICALS
   CORPORATION,       DOUGLAS    C.     Hon. David O. Carter
18 MACLELLAN, and AKIO ARIURA
19                                       Hearing Date:  August 13, 2012
        Defendants.                      Time:  8:30 a.m.
20                                       CTRM: 9D (West Fourth Street)

21

22

23

24

25

26

27

28
                                 0

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ..........................................................................................i

TABLE OF AUTHORITIES....................................................................................ii

I.   INTRODUCTION....................................................................................1

II.  FACTUAL SUMMARY...........................................................................2

III. ARGUMENT............................................................................................3

       A.   Class Certification is Appropriate Under Rule 23 ......................3

       B.   The Proposed Class Meets The Requirements of Rule 23(a) ......3

            1.   Numerosity ........................................................................4

            2.   Commonality .....................................................................4

            3.   Typicality ...........................................................................6

            4.   Adequacy ...........................................................................6

       C.   The Proposed Class Satisfies Rule 23(b)(3) ...............................8

            1.   Common Questions of Law and Fact Predominate over Individual Questions....................................................8

                  a.   Radient's Stock Traded in an Efficient Market......10

            2.   A Class Action Is Superior to Other Available Methods for Resolving This Controversy ..................................15

IV. CONCLUSION ......................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION--No. CV 11-0406-DOC (MLGx)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)................................................................2, 9

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999)........................................9, 10, 13

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975).........................................2, 3, 5, 8

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) .............................10, 11,12, 13

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003) .......................................12, 15

*Connecticut Retirement Plans & Trust Funds v. Amgen*,
    No. 07-CV-2536-PSG, 2009 WL 2633743 (C.D. Cal. Aug. 12, 2009)........6

*Connecticut Retirement Plans and Trust Funds v. Amgen, Inc.*,
    660 F.3d 1170 (9th Cir. 2011)................................................9

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................4

ii

*Freedman v. Louisiana-Pacific Corp.*,
     922 F. Supp. 377 (D. Or. 1996) ............................................................8

*Green v. Occidental Petroleum Corp.*,
     541 F.2d 1335 (9th Cir. 1976)...........................................................1

*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998).....................................................4, 8

*Hanon v. Dataproducts Corp.*,
     976 F.2d 497 (9th Cir. 1992)...........................................................6

*Harris v. Palm Springs Alpine Estates, Inc.*,
     329 F.2d 909 (9th Cir. 1964)...........................................................4

*Hodges v. Akeena Solar, Inc.*,
     274 F.R.D. 259 (N.D. Cal. 2011) ................................................16

*In re 2TheMart. com, Inc. Sec. Litig.*,
     114 F. Supp. 2d 955 (C.D. Cal. 2000)........................................10

*In re Alco Intern. Group, Inc., Sec. Litig.*,
     158 F.R.D. 152 (S.D. Cal. 1994)...................................................8

*In re Cooper Cos. Sec. Litig.*,
     254 F.R.D. 628 (C.D. Cal. 2009) ........................................1, 3, 4, 6

iii

*In re Countrywide Financial Corp Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) ............................................................ 16

*In re DVI, Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008) ............................................................ 13

*In re Emulex Corp. Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) ........................................................ 3, 8

*In re HealthSouth Corp. Sec. Litig.*,
  257 F.R.D. 260 (N.D. Ala. 2009) ............................................................ 16

*In re HiEnergy Techs., Inc. Sec. Litig.*,
  No. 04-CV-1226-DOC-(JTLx), 2006 WL 2780058 (C.D. Cal. Sept.
  26, 2006) ............................................................................................... 4

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009) ............................................................ 16

*In re Memorex Sec. Cases*,
  61 F.R.D. 88 (N.D. Cal. 1973) ................................................................ 8

*In re Nature's Sunshine Product's Inc. Sec. Litig.*,
  251 F.R.D. 656 (D. Utah 2008) .............................................................. 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION--No. CV 11-0406-DOC (MLGx)

*In re THQ, Inc. Sec. Litig.*,

    No. 00-CV-1783-AHM-Ex, 2002 WL 1832145 (C.D. Cal. Mar. 22,

    2002) ................................................................................................................ 3

*Lerwill v. Inflight Motion Pictures, Inc.*,

    582 F.2d 507 (9th Cir. 1978) ..................................................................... 7

*Nguyen v. Radient Pharms. Corp.*,

    No. SACV-11-406-DOC (MLGx), 2011 WL 5041959 (C.D. Cal.

    Oct. 20, 2011) ............................................................................................. 9

*Wal-Mart Stores, Inc. v. Dukes*,

    131 S. Ct. 2541 (2011) ............................................................................... 5

## RULES

Fed. R. Civ. P. 23 ...................................................................................... 2, 3, 5

Fed. R. Civ. P. 23(a) ..................................................................................... 3, 4

Fed. R. Civ. P.  23(a)(1) ...................................................................................... 4

Fed. R. Civ. P.  23(a)(2) ...................................................................................... 4

Fed. R. Civ. P.  23(a)(3) ...................................................................................... 6

Fed. R. Civ. P.  23(a)(4) ................................................................................... 6, 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION--No. CV 11-0406-DOC (MLGx)

Fed. R. Civ. P. 23(b)..........................................................................................3

Fed. R. Civ. P. 23(b)(3) ................................................................................7, 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION--No. CV 11-0406-DOC (MLGx)

## I.    INTRODUCTION

Lead Plaintiffs Reydel Quintana, Dat T. Tran, and Agnes Cho bring this motion to certify this securities litigation as a class action.  Plaintiffs seek class certification on behalf of those persons or entities that purchased or otherwise acquired the publicly traded common stock of Radient Pharmaceuticals Corporation ("Radient" or the "Company") between January 18, 2011 and March 4, 2011 (the "Class Period").[1]  In addition, Plaintiffs request that the Court appoint each of themselves as class representatives and to appoint the Rosen Law Firm, P.A. as Class Counsel.

This action asserts claims pursuant to the Securities Exchange Act of 1934 ("Exchange Act") against Radient, Radient's CEO and Chairman of the Board of Directors Douglas C. MacLellan  ("MacLellan"), and Radient's CFO Akio Ariura ("Ariura").   During the Class Period, Radient falsely stated that Radient was conducting clinical trials with the Mayo Clinic when the only "relationship" was that Radient had purchased test samples from a subsidiary of the Mayo Clinic. Defendants Ariura and MacLellan controlled Radient.

Plaintiffs, on behalf of other similarly situated investors who purchased Radient stock at artificially inflated prices during the Class Period, seek class certification which will permit the efficient and effective prosecution of this action on behalf of Plaintiffs and the hundreds, if not thousands, of other shareholders.  It is well settled in the Ninth Circuit that the use of class action procedures in adjudicating claims under the federal securities laws is appropriate and justified.[2]

---

[1] Excluded from the Class are Defendants, the present and former officers and directors of Radient and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

[2] *See, e.g.*, *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1337-38 (9th Cir. 1976); *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 631 (C.D. Cal. 2009).

Indeed, the "overwhelming weight of authority" holds that securities fraud actions are properly certifiable as class actions. *See Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975); *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).  Courts liberally construe the requirements of Federal Rule of Civil Procedure 23 in favor of class certification of securities fraud cases in order to protect investors. "[T]he ultimate effectiveness of [the anti-fraud provisions of the securities laws] may depend on the applicability of the class action device." *Blackie*, 524 F.2d at 903 (citations omitted). As explained below, this action satisfies all of the requirements of Rule 23.  As such, the Court should certify this case as a class action and appoint the Plaintiffs as class representatives.

## II.    FACTUAL SUMMARY

On January 18, 2011, Radient issued a materially false press release stating that Radient was conducting a clinical trial of its Onko-Sure product with the prestigious Mayo Clinic. Less than two weeks later, Radient announced the signing of a definitive agreement for the private placement of $8.4 million in convertible notes and warrants financing.

On March 7, 2011, TheStreet.com issued an article disputing the Company's representations in its January 18, 2011 press release. In particular, the article indicated that the Mayo Clinic was **not** engaged in clinical studies with Radient, and that any clinical results relating to the Onko-Sure product would be provided solely by Radient, and not the Mayo Clinic.

Following this news, on the same day, Radient's stock price fell precipitously on heavy volume from an opening price of $.57/share to a low of $.30/share, before closing at $.42/share – a one-day drop of $.12/share, or approximately 21%. As a result, Plaintiffs and the Class have been damaged.

## III.   ARGUMENT

### A. Class Certification is Appropriate Under Rule 23

The Complaint details false and misleading statements that damaged thousands of similarly situated individuals. Ninth Circuit courts have repeatedly endorsed the use of class action procedures to resolve claims under the federal securities laws.  As one court has stated, "[t]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re THQ, Inc. Sec. Litig.*, 00-CV-1783-AHM, 2002 WL 1832145, at * 2 (C.D. Cal. Mar. 22, 2002) (citations omitted); *accord In re Cooper Companies, Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (*quoting Blackie*, 524 F.2d at 903) (similar). Courts recognize that any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the members of the class.  *Blackie*, 524 F.2d at 901.

### B. The Proposed Class Meets The Requirements of Rule 23(a)

For a class to be certified, plaintiffs must satisfy the four prerequisites of Rule 23(a) and at least one requirement of Rule 23(b).  *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 718 (C.D. Cal. 2002).  Under Rule 23(a) a plaintiff must establish: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Cooper*, 254 F.R.D. 628 at 633.  "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  The proposed class easily meets these requirements.

### 1. Numerosity

The numerosity requirement of Rule 23(a) is met "where the class is so numerous that joinder of all members is 'impracticable'."  *Cooper*, 254 F.R.D. 628 at 633; Fed. R. Civ. P.  23(a)(1).  Impracticable does not mean impossible; only that it would be difficult or inconvenient to join all members of the class.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  "No exact numerical cut-off is required, rather, the specific facts of each case must be considered."  *Cooper*, 254 F.R.D. at 633.  In securities cases, numerosity is presumed when millions of shares are traded during the proposed class period.  *Id.*

Throughout the Class Period, Radient's stock traded regularly and actively, demonstrating the existence of a large class.  *See* Declaration of Laurence Rosen filed herewith ("Rosen Decl."), Ex. 1, Expert Report of Howard J. Mulcahey ("Mulcahey Decl."), ¶ 11.  In November 2010 and as of March 2, 2011 approximately 36.8 million to 106 million shares of Radient stock outstanding, respectively.  Approximately 166.9 million shares were traded during the Class Period.  Mulcahey Decl., ¶ 21.  These facts are sufficient to meet the numerosity requirement.  *See*, *e.g.*, *Cooper*, 254 F.R.D. at 633; *In re HiEnergy Techs., Inc. Sec. Litig.*, No. CV04-1226-DOC-(JTLx) 2006 WL 2780058, at * 3 (C.D. Cal. Sept. 26, 2006).

### 2. Commonality

A proposed class meets the commonality requirement if "there are questions of law or fact common to the class."  *Cooper*, 254 F.R.D. 628 at 634; Fed. R. Civ. P. 23(a)(2).  Not all questions of fact and law need be common to satisfy Rule 23(a)(2).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  This factor is "construed permissively, and '[t]he existence of shared legal issues with

4

divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'"  *Id.* at 1019; *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541, 2551 (2011) (commonality met when claims depend on common contention that is capable of classwide resolution).

The Complaint describes a "common course of conduct" which is the hallmark of securities actions brought and certified as class actions under Rule 23. As the Ninth Circuit explained in *Blackie*:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

524 F.2d at 902.

Common questions of fact and law are clear from Plaintiffs' allegations, including: (i) whether Defendants violated federal securities laws; (ii) whether Defendants made statements to the investing public during the Class Period that misrepresented and/or omitted material facts about Radient's business, prospects, and operations; (iii) whether the misstatements and omissions were made with scienter; and (iii) to what extent the members of the Class have sustained damages and the proper measure of damages.

The crux of this case is that Radient's issued materially false statements purporting that Radient was conducting a clinical study/trial with the Mayo Clinic. All plaintiffs were injured by the statements in the same way.  Thus, the proposed class meets the commonality requirement.  *See, e.g., Blackie*, 524 F.2d at 902-05.

5

1

2     ### 3.  Typicality

3           The typicality requirement is met when "the claims or defenses of the

4     representative parties are typical of the claims or defenses of the class."  *Cooper*,

5     254 F.R.D. at 635; Fed. R. Civ. P.  23(a)(3).  "Typicality refers to the nature of the

6     claim or defense of the class representative, and not to the specific facts from which

7     it arose or the relief sought."  *Connecticut Retirement Plans & Trust Funds v.*

8     *Amgen*, 07-CV-2536, 2009 WL 2633743, at *5 (C.D. Cal. Aug. 12, 2009) (*quoting*

9     *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  In determining

10    this requirement, courts look to "whether other members have the same or similar

11    injury, whether the action is based on conduct which is not unique to the named

12    plaintiffs, and whether other class members have been injured by the same

13    conduct."  *Id.* (*quoting Hanon*, 976 F.2d at 508).

14          Plaintiffs satisfy the typicality requirement.  The claims of all class members

15    derive from the same legal theories alleged by Plaintiffs and involve the same set of

16    operative facts – namely, that Radient falsely stated that it was conducting clinical

17    trials with the Mayo Clinic when the only "relationship" was that Radient had

18    purchased test samples from a subsidiary of the Mayo Clinic.  Plaintiffs, like the

19    other class members, purchased Radient's common stock and thereby suffered

20    damages as a consequence of Defendants' actions and inactions.

21          Throughout the Class Period, all members of the class, just like Plaintiffs,

22    were victims of Defendants' conduct and sustained damages as a result.  Because

23    Plaintiffs' claims arise from the same misrepresentations and omissions, such claims

24    are typical of those of the class.

25    ### 4.  Adequacy

26          Rule 23(a)(4) permits class certification when the class representatives "will

27    fairly and adequately protect the interests of the class."  *Cooper*, 254 F.R.D. at 636;

28

6

Fed. R. Civ. P.  23(a)(4). There are two criteria to determine adequacy.  "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unmanned members of the class."  *Id.* at *25-26 (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)) (citations omitted).

Plaintiffs meet these requirements.  <u>First</u>, Plaintiffs have engaged qualified, experienced and capable attorneys for this type of litigation.  Proposed Class Counsel, The Rosen Law Firm, P.A. are highly experienced in complex class litigation, especially securities fraud actions, and have the ability and willingness to prosecute this action vigorously. *See* Firm Resume, Rosen Decl., Ex. 2.

<u>Second</u>, Plaintiffs are well suited to represent the Class.  Plaintiffs' interests are the same as those of the absent Class members, and there are no conflicts between them and the Class.  Each of the Plaintiffs has been actively involved in this litigation and, importantly, each is willing to serve as a representative party on behalf of the class.  *See* Declarations of Plaintiffs, attached as Exhibits 3-5 to the Rosen Declaration.  Each Plaintiff is willing and able to prosecute this action on behalf of the class to a successful conclusion. *Id.*  Indeed, the interests of the proposed representatives and those of the class complement each other. Plaintiffs and all class members have suffered losses due to their transactions in Radient securities in an artificially inflated market.  They have been injured by the identical wrongful conduct of the Defendants.  Furthermore, it is in the Plaintiffs' interest to vigorously prosecute this action on behalf of the Class.  Accordingly, Plaintiffs "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).

**C. The Proposed Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) requires that the "questions of law or fact common to the class 'predominate' over questions affecting the individual members and, on balance, a class action is superior to other available methods of adjudicating the controversy. *Emulex*, 210 F.R.D. 717, 721 (C.D. Cal. 2002). As explained below, Plaintiffs have met both requirements.

### 1. Common Questions of Law and Fact Predominate over Individual Questions

Where a complaint alleges a "common course of conduct," of misrepresentations, omissions and other wrongdoings that affect all members of the class in the same manner, common questions predominate. *Blackie*, 524 F.2d at 905-08; *In re Alco Intern. Group, Inc., Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal. 1994). In assessing whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. *Blackie*, 524 F.2d at 902; *In re Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal. 1973); *see also Hanlon*, 150 F.3d at 1022 (9th Cir. 1998) ("'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'").

As discussed above, there are a host of common questions of law and fact in this case. These questions clearly predominate over individual questions because Defendants' conduct affected all class members in the same manner and artificially inflated the price of Radient stock. Indeed, "[t]he predominant questions of law or fact at issue in this case are the alleged misrepresentations Defendants made during the Class Period and are common to the class." *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002); *see also Freedman v. Louisiana-Pacific Corp.*,

922 F. Supp. 377, 399-400 (D. Or. 1996). Once these common questions are resolved, all that will remain is the purely mechanical act of computing the amount of damages suffered by each class member.

By contrast, there are no significant individual issues, even with respect to issues such as reliance, let alone ones which predominate. Plaintiffs' claims arising under federal securities laws do not require proof of individual reliance. Plaintiffs are entitled to the fraud-on-the-market presumption of reliance because Radient's shares traded in an efficient market during the Class Period. This presumption is based on the assumption that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Basic, Inc. v. Levinson*, 485 U.S. 243, 247 (1988). Thus, misleading statements will defraud purchasers of securities even if the purchasers do not directly rely on the misstatements. *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999).

To benefit from the fraud-on-the-market presumption, the subject securities must have traded on an efficient market, *Basic*, 485 U.S. at 246; *Binder*, 184 F.3d at 1064-65, and Plaintiffs must merely allege the supposed false statements were material. *Connecticut Retirement Plans and Trust Funds v. Amgen, Inc.*, 660 F.3d 1170, 1172 (9th Cir. 2011) (holding that materiality need only be alleged rather than proven at class certification to invoke the fraud-on-the-market presumption of reliance).

Here, Plaintiffs have adequately alleged, material misrepresentations by Radient (*Nguyen v. Radient Pharms. Corp.*, No. SACV-11-406-DOC (MLGx), 2011 WL 5041959, at * 7 (C.D. Cal. Oct. 20, 2011)),[3] thus the remaining question

---

3 As the Court may recall, Radient raised the "truth-on-the-market" defense in its motion to dismiss. This defense is not appropriate for consideration at class certification. The Ninth Circuit held that the "truth-on-the-market" affirmative defense is a merits issues inappropriate at class certification, but appropriate at

is whether Radient stock traded in an efficient market to invoke the fraud-on-the-market presumption of reliance.

### a.  Radient's Stock Traded in an Efficient Market
### *Cammer* Factors Demonstrate Market Efficiency

The Ninth Circuit uses the "*Cammer*" factors to determine whether an efficient market is established. *See Binder*, 184 F.3d at 1064 (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)). The *Cammer* factors are: (1) average weekly trading volume in the security as a percentage of shares outstanding; (2) the extent of analyst coverage; (3) the number of arbitrageurs and market-makers in the security; (4) whether the company is eligible to file a registration statement on Form S-3; and (5) facts showing a cause-and-effect relationship between unexpected corporate events or news about the company and immediate responses in its stock price. *Cammer*, 711 F. Supp. at 1286-87.

As evidenced in the Mulcahey Declaration, a holistic analysis of the *Cammer* factors and other indicia of market efficiency demonstrate that Radient's common stock traded in an efficient market during the class period.

**Factor One — Weekly Trading Volume:** "[A] large weekly volume of stock trades … implies significant investor interest in the company. Such interest, in turn, implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information." *Cammer*, 711 F.Supp. at 1286.

The average weekly trading volume for Radient's stock during the Class Period was 31.7% of Radient's outstanding shares. *See* Mulcahey Decl., ¶ 21, & Ex. 3 thereto.  The 31.7% weekly turnover is over fifteen times the 2.0% weekly

summary judgment or trial.  *Amgen*, 660 F.3d at 1177 ("the district court correctly refused to consider Amgen's truth-on-the-market defense at the class certification stage.").

turnover that the *Cammer* court explained would justify a "strong presumption of an efficient market." *Cammer*, 713 F.Supp. at 1286; *In re 2TheMart. com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 963-964 (C.D. Cal. 2000).  Because Radient's heavy weekly trading volume far exceeds the trading volume required under *Cammer*, this factor weighs strongly in favor of a presumption of reliance.

**Factor Two** — **Analyst Coverage:** The existence of significant analyst coverage on a stock would imply that information about the company would be rapidly reflected in the company's stock price.  *Cammer*, 713 F.Supp. at 1286; *See* Mulcahey Decl., ¶ 22.

During the twelve month period between March 8, 2010 and March 4, 2012, there were 58 analyst reports published about Radient published by ten different contributors. [4]  *See* Mulcahey Decl., ¶ 24.  At least seven of these contributors, Crystal Research Associates, Pechala's Reports, Riskmetrics Group, Goldman Small Cap Research, FBR Capital Markets & Co., Bogner Business Associates, and TheStreet.com, issued a combined 33 reports that contained quantitative and qualitative analysis of Radient's financial performance.  *Id.*  Analyst coverage continued after the Class Period.  *See id.,* at ¶ 25.  Consequently, Mr. Mulcahey opined that "the number of analysts reports and analysts covering Radient generally supports an efficient market."  *Id.*, at ¶ 29; s*ee In re Nature's Sunshine Product's Inc. Sec. Litig.*, 251 F.R.D. 656, 662-63 (D. Utah 2008) (explaining that courts have found that coverage by two analysts publishing reports does not heavily favor a finding of market efficiency; four or more weighs in favor of finding market efficiency) (citations omitted).

---

[4] Because the Class Period only spans 33 days, and securities analyst reports are published periodically, Mr. Mulcahey expanded his report to look at the twelve month of March 8, 2010, and March 4, 2011, because it provides a more representative sample of analyst coverage.

The sheer volume of news stories and coverage also support an efficient market because the information about the Company was thus available to investors. Mulcahey Decl., ¶¶ 27- 29.  Between March 8, 2010 and March 4, 2011, over 1,460 news stories and press releases featuring Radient appeared in financial publications. *Id.*  During the 33 trading day Class Period, there were more than 270 news events and 13 Radient SEC filings.  *Id.*  The sheer number of news events support an inference that the stock traded on an efficient market.  *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 499 (S.D. Fla. 2003) (524 news items over two year Class Period showed stock traded on efficient market).

**Factor Three — Arbitrageurs and Market Makers**:  The number of market-makers is not germane to Radient stock because for the majority of the Class Period, Radient's stock traded on the NYSE Amex stock market.  *See* Mulcahey Decl., ¶ 32.  Stocks that trade in an "auction market" like the NYSE and AMEX stock markets have only one designated market maker (formerly referred to as a specialist), as opposed to multiple market makers found on the over the counter and Nasdaq markets. *Id.*  However, the presence of a designated market maker supports a finding of efficiency.  *Id.,* at ¶ 33.

**Factor Four — S-3 Eligibility**:  The *Cammer* Court found that a Company's eligibility to file a short-form registration statement, i.e. Form S-3, supports a finding of an efficient market.  *Cammer*, 711 F.Supp. at 1285.  Here, Radient was eligible and did file S-3 registration statements with the  SEC during the Class Period. *See* Mulcahey Decl., ¶ 36.  Hence, this factor supports a finding of market efficiency.  *Id.*, at ¶ 38.

**Factor Five — Cause-Effect Relationship of Unexpected Material News and Stock Price**:   The fifth factor is whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial

releases and an immediate response in stock price." *Binder*, 184 F.3d at 1065 (quoting *Camber*, 711 F. Supp at 1287).

To this end, Mr. Mulcahey employed an event study to determine the impact of new and material information about Radient on Radient's stock price. *See* Mulcahey Decl., ¶¶ 39-54. The event study covered the same the period between March 8, 2010 through March 4, 2011, since the Class Period contained only 33 trading days which may be too few observations to draw conclusions about the cause and effect relationship between public disclosures and resulting stock price reactions. *See* Mulcahey Dec., ¶ 56.

Mr. Mulcahey concluded that:

(a) <u>Reaction to new information</u>: on the 10 largest returns days (i.e. comparison of the day-to-day percentage change of Radient stock) (Mulcahey Decl., ¶ 43), on six of those days (or 60%) Mulcahey found there were excess returns that were consistent with news disclosed on those days. Mulcahey Decl., ¶¶ 56-57. According to Mulcahey, "[t]his is consistent with finding of market efficiency in scholarly research…" *Id.,* at ¶ 57; *see In re DVI, Inc. Sec. Litig.*, 249 F.R.D. 196, 211 (E.D. Pa. 2008) ("Because approximately 60% of the changes in DVI's stock price can be linked to identifiable news events, the Court finds that this level of correlation strongly suggests a relatively efficient market. Accordingly, this factor weighs in favor of efficiency.").

(b) <u>Stock price reaction to Company's Press Releases</u>: Radient's press releases were associated with statistically significant excess returns, meaning that news regarding Radient was rapidly absorbed into the stock price, and supporting a finding of market efficiency. Additionally stock price returns on days in which Radient issued press releases was significantly different than days in which Radient did not issue a press release, supporting a finding of market efficiency. *See* Mulcahey Decl., ¶¶ 60-63.

(c) <u>News was quickly absorbed into stock price</u>:  Mr. Mulcahey found that on ten significant return days, only on one of the ten days did it take more than one day for the news to be incorporated in Radient's common stock price.   Thus, Mr. Mulcahey found that the speed reaction test supports a finding of an efficient market.  *See* Mulcahey Decl., ¶¶64-67.

(d) <u>Correlation between absolute stock returns and trading volume support market efficiency</u>: Mr. Mulcahey found a statistically significant and strong positive relationship between absolute stock returns and trading volume; which supports market efficiency. *See* Mulcahey Decl., ¶¶68-72.

In short, Mr. Mulcahey states  "I conclude that the results from my analyses above of the cause and effect of new information on Radient's common stock support of finding of market efficiency for Radient common stock over the Class Period."  Mulcahey Decl., ¶ 73.

## **<u>Other Indicia of Market Efficiency</u>**

Mr. Mulcahey considered other indicia of market efficiency.

(a)    <u>Bid-ask spread supports market efficiency</u>:  The bid-ask spread is the "the difference between the price at which current stockholders are willing to buy the stock and the price at which current stockholders are willing to sell their shares." *Cheyney v. Cyberguard Corp.,* 213 F.R.D. 484, 501 (S.D. Fla. 2003). The *Cyberguard* the Court observed that a bid-ask spread of 5.6% suggested market inefficiency, but found that a spread of 2.44% weighed in favor of market efficiency.  *Id.* The bid-ask spread of Radient stock during the Class Period was 0.58%--which was also lower than the bid-ask spreads for similarly sized company stocks listed on the NYSE or Amex   *See* Mulcahey Decl., ¶ 78.   Thus, Mr. Mulcahey concluded that Radient's bid-ask spread supported an efficient market. *Id.*, at ¶ 79.

(b)    <u>No autocorrelation supports market efficiency</u>: Autocorrelation means that tomorrow's stock price movement can be predicted with a degree of statistical confidence based solely on the price movement today.  *See* Mulcahey Decl., ¶ 80. Mr. Mulcahey  found no significant autocorrelation, which supports market efficiency.  *See* Mulcahey Decl., ¶ 82.

(c)    <u>Short interest supports market efficiency</u>: Mr. Mulcahey found that short interest in Radient stock was consistent with an efficient market.    *See* Mulcahey Decl., ¶¶ 87-90.[5]

After consideration of all the *Cammer* factors and the other indicia above, Mr. Mulcahey concluded that  "it is my opinion that Radient common stock traded in an efficient market with regard to publicly disclosed information during the Class Period."  Mulcahey Decl., ¶ 91. Thus, the issues of law and fact that flow from Defendants' activities predominate over any individual issues because the Complaint alleges a continuous course of conduct committed by defendants and directed against the members of the class

## 2. A Class Action Is Superior to Other Available Methods for Resolving This Controversy

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Courts have recognized that the class action device is superior to other available methods for managing litigation involving a large number of purchasers of securities injured by violations of the securities laws. "[C]lass action treatment presents a superior method for the fair and efficient resolution of securities fraud cases." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D.

---

5 Mr. Mulcahey noted that the level institutional ownership did not support market efficiency (Mulcahey Decl., ¶¶83-86), but he did not find that single factor to be dispositive.

260, 284 (N.D. Ala. 2009); *accord Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 270-71 (N.D. Cal. 2011) (similar); *In re Countrywide Financial Corp Sec. Litig.*, 273 F.R.D. 586, 623-24 (C.D. Cal. 2009) (superiority clearly met where parties "need only establish what happened within Countrywide, when, and who knew (or should have known)"). In determining the issue of superiority, Rule 23(b)(3) enumerates the following factors for this court to consider:

> (1) the class members' interests in individually controlling the prosecution . . . of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by . . . class members, (3) the desirability . . . of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Each of these factors is satisfied in this case. The number of class members is far too numerous and the typical claim is too small for each individual class member to maintain separate actions. Further, this Court is an appropriate forum for a substantial part of the alleged misconduct occurred in this district. Moreover, the nationwide geographical dispersion of the class members, based upon Radient's sale of the stock on a national exchange, makes it desirable that litigation of the claims involved be concentrated in this forum. *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 593 (N.D. Cal. 2009) ("it is almost certain that there will be thousands of class members. Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum"). Finally, Plaintiffs foresee no management difficulties that would preclude this action from being maintained as a class action and are confident that any potential management problems can be addressed and resolved by the parties or by this Court.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request entry of an order certifying this action as a class action, appointing Reydel Quintana, Dat T. Tran, and Agnes Cho as class representatives, and appointing the Rosen Law Firm, P.A. as class counsel.

Should the Court grant this motion, as provided in the [Proposed] Order filed herewith, the Court should direct the parties to meet and confer on the form and manner of providing notice; and require the parties to file their proposal for providing notice to Class for Court approval within sixty (60) days from entry of the Order granting class certification.

Respectfully submitted,

**THE ROSEN LAW FIRM P.A.**

Dated March 23, 2012

/s/ Laurence M. Rosen
Laurence M. Rosen
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Fax: (213) 226-4684
lrosen@rosenlegal.com

Lead Counsel for Plaintiffs

17

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am an attorney with the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450 , Los Angeles, CA 9007.  I am over the age of eighteen.

On March 23, 2012, I electronically filed the following MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on March 23, 2012

/s/ Laurence M. Rosen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION--No. CV 11-0406-DOC (MLGx)