**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
Phillip Kim (admitted pro hac vice)
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
E-mail: lrosen@rosenlegal.com
E-mail: pkim@rosenlegal.com

Class counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| VINH NGUYEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>RADIENT PHARMACEUTICALS CORPORATION AND DOUGLAS C. MACLELLAN,<br><br>Defendants. | CASE No.:CV-11-0406-DOC (MLGx)<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**<br><br>Judge: Hon. David O. Carter<br>Courtroom: 9D<br>Hearing Date: April 22, 2014<br>Hearing Time: 8:30 a.m. |

# TABLE OF CONTENTS

I. OVERVIEW OF THE LITIGATION ................................................................. 1

II. THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT AS FAIR, REASONABLE AND ADEQUATE TO THE CLASS ....................... 3

    A. Standards of Review ................................................................................. 3
    B. All of the Relevant Considerations Employed by Courts in This Circuit Favor Approval of the Proposed Settlement .......................................... 5

        1. Strength of Plaintiffs' Case, The Risk, Expense, Complexity and Likely Duration of Further Litigation ........................................... 5
        2. The Amount Offered in the Settlement ........................................ 7
        3. Risk of Maintaining a Class Action .............................................. 8
        4. Stage of the Proceedings ............................................................... 9
        5. Experienced Counsel Concur that the Settlement, Which Was Negotiated in Good Faith and at Arm's-Length, is Fair, Reasonable and Adequate ......................................................... 10
        6. The Reaction of the Class Members to the Settlement ............. 10

III. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ....... 11

IV. CONCLUSION ............................................................................................... 12

i

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

# TABLE OF AUTHORITIES

**Cases**

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992)...................................................................................3, 11

*Dura Pharmaceuticals, Inc. v. Broudo*,
 544 U.S. 336, 342 (20050 ........................................................................................12

*Ellis v. Naval Air Rework Facility*,
 87 F.R.D. 15(N.D. Cal. 1980), ...............................................................................4, 10

*Evans v. Jeff D.*,
 475 U.S. 717 (1986) ..................................................................................................4

*Granada Invs., Inc. v. DWG Corp.*,
 962 F.2d 1203, 1206 (6th Cir. 1992)...........................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
 No. 13-317...................................................................................................................9

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998)............................................................................4, 5, 11

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d. Cir. 2001)......................................................................................8

*In re Cendant Corp. Sec. Litig.*,
 109 F.Supp. 2d 235 (D.N.J. 2000) .............................................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004)...............................................................................12

*In re Heritage Bond Litig.*,
 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................................6-8, 11

*In re Ikon Office Solutions, Inc.*,
 194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................7

ii

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................. 4, 5, 11

*In re MicroStrategy, Inc. Sec.Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ............................................................. 11

*In re Nasdaq Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................... 6

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994) ................................................ 11

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.1997) .................................................................... 10

*In re Prudential Sec., Inc. L.P. Litig.*,
    1995 WL798907 (S.D.N.Y. Nov 20, 1995) ..................................................... 7

*In re Rite Aid Corp. Sec. Litig.*,
    146 F .Supp.2d 706, 715 (E.D. Pa. 2001) ........................................................ 7

*In re Sumitomo Cooper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................... 8

*In re Warner Comm. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................. 6

*Linney v. Alaska Cellular P'ship*,
    1997 WL 450064 (N.D. Cal. July 18, 1997) ................................................... 4

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................. 3-4, 5

*Officers for Justice v. Civil Serv. Comm'n.*,
    688 F.2d 615 (9th Cir. 1982) ....................................................................... 4, 7

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................. 7

*Viscaino v. U.S. District Court*,
    173 F.3d 713 (9th Cir. 1999) ........................................................................... 9

iii

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

*West Virginia v. Chas. Pfizer & Co.*,
 314 F. Supp. 710 (S.D.N.Y. 1970) ................................................................................. 6

Federal Rules of Civil Procedure
 23(c)(1) ............................................................................................................................ 9
 23(e) ................................................................................................................................. 3

**Other Authorities**

*Manual for Complex Litigation* (Third) § 30.42 (1995) .......................................... 10

iv

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

Lead Plaintiffs through their undersigned counsel, submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 23(e), for final approval of the class action Settlement, as set forth in the Stipulation and Agreement of Settlement, dated December 16, 2013 (dkt. # 123) (the "Settlement Agreement" or "Stipulation."). This Action has been settled for a $2,500,000 cash payment. The Settlement results from Lead Plaintiffs' vigorous case prosecution and arm's length settlement negotiations between the parties.

## I. OVERVIEW OF THE LITIGATION[1,2]

The Settlement was brought to fruition only after hard-fought litigation by Lead Plaintiffs' Counsel. This Litigation was carefully investigated and vigorously litigated from start to finish. Throughout this Litigation, Settling Defendants have asserted aggressive defenses and have maintained that Plaintiffs could not prevail on their claims.

This case was filed as a class action on behalf of all persons who purchased Radient Pharmaceuticals Corporation ("Radient" or the "Company") common stock between January 18, 2011 through March 4, 2011, inclusive (the "Class Period"). By Order dated June 6, 2011, the Court appointed Reydel Quintana, Dat Tan Tran, and Agnes Cho as Lead Plaintiffs, and approved their selection of The Rosen Law Firm, P.A. Lead Counsel. *See* Rosen Decl. ¶ 9.

The Settlement was not achieved until Plaintiffs and their counsel (a) reviewed and analyzed publicly available information about Radient including the

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation.

[2] For the sake of brevity, a full description of the procedural history of this Action has been omitted. It can be found in the Declaration of Laurence Rosen In Support of Final Approval of Class Action Settlement and Plan of Allocation filed herewith ("Rosen Decl." or "Rosen Declaration"), ¶¶ 8-20.

1

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

Company's SEC filings, news articles, conference call transcripts, analyst reports, and stock trading data; (b) consulted with and retained experts relating to damages, loss causation, market efficiency, and clinical trials; (c) filed the operative complaint, (d) successfully opposed Defendants' motion to dismiss; (e) obtained class certification; (f) completed fact and expert discovery, which included the review of thousands of documents, and nine fact depositions and three expert depositions; (g) successfully opposed Settling Defendants' motions for summary judgment; (h) engaged in trial preparation; (i) engaged in frequent settlement negotiations throughout the litigation, including an all-day mediation with retired Magistrate Judge Leo S. Papas; and (j) negotiated and drafted the Stipulation of Settlement and Notice to class members. Rosen Decl., ¶ 6.

The $2,500,000 million settlement could not have been achieved earlier in the litigation as the amounts offered by Settling Defendants did not approach the settlement amount until the eve of trial. Rosen Decl., ¶ 23.

To date, 12,389 claim packets, including the detailed "Notice of Pendency and Settlement of Class Action," ('the "Notice") and "Proof of Claim and Release" form have been sent by first-class mail to potential Settlement Class Members, and a Summary Notice has been timely published in *Investor's Business Daily* and through *Globenewswire*. *See* Declaration of Josephine Bravata Concerning Mailing of Notice of Pendency and Settlement of Class Action and Proof of Claim and Release Form attached ("Bravata Decl."), ¶¶ 4-7 (attached as Ex. 1 to Rosen Declaration). The deadline to object to any aspect of the Settlement is April 2, 2014 and the deadline to request exclusion is March 24, 2014. Bravata Decl., ¶¶ 9-10. To date, there has been one request for exclusion, but it failed to indicate the purchase and sale dates of Radient stock, and no objections. *Id.*

2

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

As detailed in the Rosen Declaration, the Settlement represents a realistic assessment by knowledgeable and experienced attorneys of the risks of trial and Settling Defendants' poor financial condition. Rosen Decl., ¶¶ 24. Thus, not only was it unlikely that Radient would be able to satisfy a greater judgment, there was the substantial risk that were the litigation to continue for through trial and appeals, even the current Settlement amount would become unrecoverable. The Settlement, on the other hand, confers an immediate and substantial benefit on the Settlement Class. It represents a recovery of approximately 25.8% of the Class' *maximum* estimated damages, and eliminates the risk, expense and uncertainty of continued litigation under circumstances where a more favorable outcome was at great risk. Rosen Decl., ¶ 24. By any objective measure, the Settlement is fair, reasonable, and adequate and should be approved.

## II. THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT AS FAIR, REASONABLE AND ADEQUATE TO THE CLASS

### A. Standards of Review

Federal Rule of Civil Procedure 23(e) provides that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses." In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Consequently, in making its assessment pursuant to Rule 23(e), the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that

3

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, the ultimate decision is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *see also Hanlon*, 150 F.3d at 1011, 1025. To avoid excessive intrusion into the parties' compromise, the court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *Officers for Justice*, 688 F.2d at 628. Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length [sic] negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Alaska Cellular P'ship*, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd.*, 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd.*, 661 F.2d 939 (9th Cir. 1981).

As explained below, the Settlement was reached after extensive investigation and litigation by experienced counsel on both sides, and after protracted arms-length negotiations. Under these circumstances, the Settlement should be afforded the presumption of fairness.

4

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

### B. All of the Relevant Considerations Employed by Courts in This Circuit Favor Approval of the Proposed Settlement

To determine whether a proposed settlement is fair, reasonable, and adequate, a court must examine the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242; *Hanlon*, 150 F.3d at 1026. While these factors need to be explored comprehensively when a settlement is reached prior to formal class certification, *Mego*, 214 F.3d at 458, as applied to the instant action, these factors all point toward approval of the proposed Settlement.

#### 1. Strength of Plaintiffs' Case, The Risk, Expense, Complexity and Likely Duration of Further Litigation

This action settled on the eve of trial and after substantial trial preparation, thus Lead Plaintiffs and their counsel were well aware of the strengths and weaknesses of the case and the risks of proceeding to trial and navigating the likely appeals. *E.g.* Rosen Decl. ¶¶ 34-39.

Lead Plaintiffs' faced numerous complex and challenging risks at trial. As to scienter, Settling Defendants had colorable defenses that demonstrated that there was a "clinical trial" of Onko-Sure that involved some Mayo Clinic personnel, thus, this could support Defendants' contention that they did not act with scienter, but more akin to an inactionable state of mind such as gross negligence. This determination would turn on the jury's assessment of Settling Defendants on the stand and posed a significant risk to Lead Plaintiffs at trial, as no one can accurately predict how a particular witness would present in front a jury. Rosen Decl., ¶ 35. Indeed, in a defendant's mental state, "[i]t is known from past

5

experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *See In re Heritage Bond Litig.*, Nos. 02-ML-1475 DT *et seq.*, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) (*quoting West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)).

As to damages, they would have been subject to the proverbial "battle of the experts" and again, one cannot predict which damages model or estimate the fact finder would accept, given the complexities involved. This posed a significant risk given the divergent opinions on damages. Rosen Decl.,¶ 36. As one Court observed:

> In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985); *see also Heritage*, 2005 WL 1594403, at *6 (noting that class actions have a well-deserved reputation as being the most complex) (citation omitted); *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (same).

Setting aside the difficulties in proving Lead Plaintiffs' claims at trial and upholding them on appeal, pragmatic considerations dictate that settlement at this time is in the best interest of the Class. Moreover, it is not likely Settling Defendants could satisfy a greater judgment given Radient common stock trades at a fraction of a penny and it generates no material revenue. Rosen Decl., ¶ 24.

On the other hand, the Settlement confers an immediate, reasonable, and valuable cash benefit to Class Members – one that negates the very real risks to recovery posed by continued litigation. As explained by the Ninth Circuit, whereas here, if the financial condition of the Settling Defendants is strained, this factor weighs in favor of approving the Settlement and "predominate[s]" over the

other factors. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (financial condition of the Company "predominated" over other factors in favor of settlement); *see also In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000).

## 2. The Amount Offered in the Settlement

Settling Defendants' payment of $2,500,000 in cash to the Class will provide an excellent recovery under the circumstances. Reality dictates that, to settle a case, some discount needs to be offered to the defendants, or they would otherwise have no economic incentive to settle. Additionally, in the context of a factually and legally complex securities class action lawsuit, responsible class counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted); *Officers for Justice,* 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").

Here, the Settlement represents 25.8% of Plaintiffs' estimated maximum damages in this case are approximately $9.675 million. *E.g.,* Rosen Decl., ¶¶ 24, 36. A 25.8% recovery of Plaintiffs' maximum damages is an excellent result and beyond the typical recoveries of cases of this type. *See In re Prudential Sec., Inc. L.P. Litig.*, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses).

7

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

Indeed, recent studies show that the median settlement value as a percentage of damages for cases such as this one with $9.675 million in damages is 17%. *See* Dr. Renzo Comolli, Sukaina Klein, Ron Miller, and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review, at p. 32, attached as Ex. 3 to the Rosen Declaration; *see, also, In re Cendant Corp. Sec. Litig.*, 109 F.Supp. 2d 235, 245 (D.N.J. 2000)(citing: (1) study of 377 securities class action settlements which found that the average settlement comprises between 9% and 14% of claimed damages and (2) cases which settled for 1.6% - 10% of claimed damages). These figures are based on the gross recovery in cases, before the deduction of attorneys' fees and expenses. *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses).

Finally, Plaintiffs' estimated recovery figure is based upon their calculation of provable damages, and does not take into account the various defenses described above. *See* Rosen Decl., ¶¶ 34-39. If a jury chose to credit Settling Defendants' expert over Lead Plaintiffs' expert, in whole or in part, with respect to whether a significant portion of the share price decline was causally related to Settling Defendants' alleged misrepresentations and omissions, this could have substantially reduced the total amount of damages. *See* Rosen Decl., ¶ 36. Consequently, had the case been tried, there was a fair possibility that the damages ultimately proved could have been lower. *See, e.g., Heritage*, 2005 WL 1594403, at *7 (citing *In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999), where the court recounted several instances where settlement was rejected by a court only to have the recovery generated by continued litigation ultimately be less than the proposed settlement).

### 3. Risk of Maintaining a Class Action

8

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

Even though a class has been certified prior to settlement proceedings, such an order would be conditional. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See, e.g., Viscaino v. U.S. District Court*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "before the decision on the merits").

Additionally, the Supreme Court recently heard oral argument in *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317 considering the viability of the fraud-on-the-market presumption of reliance. Should the Supreme Court change the law on the presumption, which was invoked in this case, it is likely that additional complex and expensive proceedings would be required to the address any change in law—especially given the fact Lead Plaintiffs' relied on expert evidence to invoke the fraud-on-the-market presumption of reliance. Rosen Decl., ¶ 37.

### 4. Stage of the Proceedings

Lead Plaintiffs and their counsel had sufficient information to evaluate their case and to assess the propriety of a settlement. As noted above, extensive fact and expert discovery was completed, summary judgment motions were decided, and trial preparation was initiated. Thus, Lead Plaintiffs and their counsel were in an excellent position to evaluate the strengths and weaknesses of their allegations against the Settling Defendants, and the defenses raised thereto, as well as the substantial risks of continued litigation, and to conclude that the settlement provides a fair, adequate, and reasonable recovery, and that is in the best interest of the Class. Having sufficient information to properly evaluate the Litigation, Plaintiffs have managed to settle this Litigation on terms very favorable to the Class and without the substantial additional expense, risk, and uncertainty of continued litigation. This factor weighs in favor of this Court's approval of the settlement.

9

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

### 5. Experienced Counsel Concur that the Settlement, Which was Negotiated in Good Faith and at Arm's-Length, is Fair, Reasonable, and Adequate

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis*, 87 F.R.D. at 18; *see also National Rural*, 221 F.R.D. at 528 ("'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation'") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.1997)). And "a presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Manual for Complex Litigation* (Third) § 30.42 (1995).   This case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in this area of securities litigation.  See Rosen Decl., ¶¶ 45-47, Ex. C of Rosen Fee Decl., Ex. 2. Accordingly, this factor weighs in favor of the Settlement.

In addition, the Settlement negotiations were aided by nationally regarded mediator Leo S. Papas, retired Magistrate Judge for the U.S. District Court, Southern District of California.  The parties engaged in hard-fought negotiations during an all day mediation in Los Angeles, California. While the mediation did not result in the settlement, it materially advanced the negotiations and aided the parties.  *See* Rosen Decl., ¶¶ 21-22.

### 6. The Reaction of the Class Members to the Settlement

Pursuant to the Court's Notice Order, over 12,000 were sent to Class Members and Summary Notice was published in *Investors' Business Daily* and electronically over the *Globenewswire*.  *See* Bravata Decl., ¶¶ 6-7.  The deadline to object to any aspect of the Settlement is April 2, 2014. *Id.*, at ¶ 10.   The deadline to exclude oneself from the Settlement is March 24, 2014.  *Id.*, at ¶ 9. To

10

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

date, no objections have been received and there has been one request for exclusion but it appears to fail to abide by the Court's Janaury31, 2014 Order. *Id.,* at ¶¶ 9-10. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness" *Hanlon,* 150 F.3d at 1027; *see also Mego Fin. Corp.*, 213 F.3d at 458.

In short, the pertinent factors considered by Courts all weigh in favor of final approval of the Settlement. As such, the Court should finally approve the Settlement as fair, reasonable, and adequate.

## III. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284 (internal citation omitted)). "To warrant approval, the plan of allocation must also meet the standards by which the...settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284-85; *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *Oracle*, 1994 WL 502054, at *1. Therefore, as noted in *MicroStrategy*, 148 F. Supp. 2d at 669:

> "a plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."

The proposed Plan of Allocation herein was fully described in the Notice sent to the Class, at Paragraph 7 thereof. *See* Bravata Decl., Ex. A. It was

11

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

formulated by Lead Plaintiffs' Counsel, with the aid of a financial consultant, with the goal of reimbursing Class members in a fair and reasonable manner consistent with the federal securities and the principles of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, i.e. losses from sales made prior to revelation of truth. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation requires any gains from Class Period transactions to be netted with losses from Class Period transactions, which is rational and reasonable. Once these considerations are taken into account, the Plan of Allocation provides that each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (i.e., Settlement Amount less attorneys' fees and expenses, and award to Lead Plaintiff). *See* Bravata Decl., Ex. A.

In short, the Plan of Allocation has a rational basis, Lead Counsel believes it fairly compensates Class Members, and this Court should approve it. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis.").

### IV. <u>CONCLUSION</u>

Whereas both the Settlement and the Plan of Allocation are fair, reasonable, and adequate, Lead Plaintiffs respectfully request that each be approved by this Court.

12

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

DATED: March 24, 2014  Respectfully submitted,

**THE ROSEN LAW FIRM P.A**.

/s/ Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
Phillip Kim. (admitted *pro hac vice*)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com
pkim@rosenlegal.com

Lead Counsel for Lead Plaintiffs and the Class

13

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)

# CERTIFICATE OF SERVICE

I, Laurence Rosen, hereby declare under penalty of perjury as follows:

I am attorney with the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA, 90071. I am over the age of eighteen.

On March 24, 2014, I electronically filed the following **LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on March 24, 2014:

/s/ Laurence Rosen

14

Lead Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation- No. CV-11-0406-DOC (MLGx)