**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
Phillip Kim (admitted pro hac vice)
355 South Grand Avenue, Suite 2450
Los Angeles, California  90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
E-mail: lrosen@rosenlegal.com
E-mail: pkim@rosenlegal.com

Class counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| VINH NGUYEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> RADIENT PHARMACEUTICALS CORPORATION AND DOUGLAS C. MACLELLAN, <br><br> Defendants. | CASE No.:CV-11-0406-DOC (MLGx) <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENTS OF EXPENSES AND AWARD TO LEAD PLAINTIFFS** <br><br> Judge: Hon. David O. Carter <br> Courtroom: 9D <br> Hearing Date: April 22, 2014 <br> Hearing Time: 8:30 a.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................ 1

II.  SPECIFIC EFFORTS OF PLAINTIFFS' COUNSEL .............................. 2

III. REASONABLE PERCENTAGE OF THE "COMMON FUND"
     RECEOVERED IS AN APPROPRIATE APPROACH TO AWARDING
     ATTORNEYS' FEES ................................................................................. 4

     A.   The Common Fund Doctrine ......................................................... 4

     B.   The Percentage-of-Fund Approach ............................................... 5

     C.   Courts In This Circuit Have Often Awarded 28% Or More Of The
          Common Fund As A Reasonable Fee ............................................ 6

IV.  AN AWARD OF 28% OF THE SETTLEMENT FUND IS REASONABLE
     IN THIS CASE .......................................................................................... 8

     A.   Counsel Achieved An Excellent Result For The Class ................. 8

     B.   The Risks Of The Litigation ......................................................... 9

     C.   The Skill Required And The Quality And Efficiency Of The Work ....... 10

     D.   The Contingent Nature Of The Case And The Financial Burden Carried
          By The Lead Plaintiffs' Counsel ................................................ 111

     E.   The Customary Fee ..................................................................... 11

     F.   A Lodestar Cross-Check Shows the Fee Request Is Reasonable ........... 12

     G.   The Reaction Of The Class Supports The Requested Award ................. 13

V.   PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND
     WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ........... 13

VI.  THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED ......... 16

VII. CONCLUSION ........................................................................................ 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995) ...................................................................14

*Arenson v. Bd. of Trade*,
  372 F. Supp. 1349 (N.D. Ill. 1974) ........................................................10

*Berchin v. General Dynamics Corp.*,
  1996 WL 465752 (S.D.N.Y. Aug. 14, 1996)...........................................7

*Blum v. Stevenson*,
  465 U.S. 886 (1984)..........................................................................5, 11

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) ...................................................................14

*Buccellato v. AT&T Operations, Inc.*,
  No. C10-00463-LHK, 2011 WL 4526673 (N.D. Cal. June 30, 2011) .................16

*Central Railroad. & Banking Co. of Ga. v. Pettus*,
  113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885)......................................5

*Cullen v. Whitman Medical Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)..............................................................13

*Eltman v. Grandma Lee's Inc.*,
  1986 WL 53400 (E.D.N.Y. May 28, 1986) .............................................10

*Faircloth v. Certified Fin. Inc.*,
  2001 WL 527489 (E.D. La. May 16, 2001)..............................................7

*Fischel v. Equitable Life Assur.*,
  307 F.3d 997 (9th Cir. 2002) ..................................................................12

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  741 F. Supp. 84 (S.D.N.Y. 1990) ...........................................................16

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ..........................................................14, 15, 16

ii

Lead Plaintiffs' Memorandum of Law in Support of An Award of Attorneys' Fees and Reimbursement of Expenses And Award to Lead Plaintiffs-No. CV-11-406-DOC (MLGx)

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983) ............................................................................ 8

*In re Activision Sec. Litig.*,
　723 F. Supp. 1373 (N.D. Cal. 1989) ............................................... 6, 7

*In re Blech Sec. Litig.*,
　2002 WL 31720381 (S.D.N.Y Dec. 4, 2002) ....................................... 7

*In re BP p.l.c. Sec. Litig.*,
　852 F. Supp.2 d 767 (S.D. Tex. 2012) ............................................... 10

*In re Cendant Corp. Sec. Litig.*,
　404 F.3d 173 (3d Cir. 2005) ....................................................... 6, 8, 9

*In re Cont'l Ill. Sec. Litig.*,
　962 F.2d 566 (7th Cir. 1992) ............................................................. 6

*In re Crazy Eddie Sec. Litig.*,
　824 F. Supp. 320 (E.D.N.Y. 1993) ................................................... 13

*In re Equity Funding Corp. Sec. Litig.*,
　438 F. Supp. 1303 (C.D. Cal. 1977) ................................................. 10

*In re Giant Interatice Grp., Inc. Sec. Litig.*,
　279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................... 17

*In re Immune Response Sec. Litig.*,
　497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................... 14, 15, 16

*In re King Res. Co. Sec. Litig.*,
　420 F. Supp. 610 (D. Colo. 1976) ............................................... 8, 10

*In re Linerboard Antitrust Litig.*,
　2004 WL 1221350 (E.D. Pa. June 2, 2004) ...................................... 12

*In re M.D.C. Holdings Sec. Litig.*,
　1990 WL 454747 (S.D. Cal. 1990)..................................................... 12

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
　842 F. Supp. 733 (S.D.N.Y. 1994) ................................................... 16

*In re Medical X-Ray Film Antitrust Litig.*,
　1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)....................................... 13

iii

Lead Plaintiffs' Memorandum of Law in Support of An Award of Attorneys' Fees and Reimbursement of Expenses And Award
to Lead Plaintiffs-No. CV-11-406-DOC (MLGx)

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F. 3d 454 (9th Cir. 2000) ..................................................................... 7

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................... 10

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ......................................................................... 7

*In re Ravisent Sec. Litig.*,
  2005 WL 906361 (E.D. Pa. April 18, 2005) ............................................. 12

*In re Safety Components*,
  166 F. Supp.2d 72 (D.N.J. 2001) ............................................................... 13

*In re Select Comfort Corp. Secs. Litig.*,
  No. 99-884 (D. Minn. Feb. 28, 2003) .......................................................... 7

*In re StockerYale, Inc. Secs. Litig.*,
  2007 WL 4589772 (D.N.H. Dec. 18, 2007) ................................................ 7

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................... 6

*In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*,
  631 F.3d 913 (8th Cir. 2011) ..................................................................... 15

*In re Veritas Software Corp. Sec. Litig.*,
  396 Fed. App'x 815 (3d Cir. 2010) ............................................................ 16

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ..........................................................5, 7, 9, 11

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................ 16

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) .................................................................. 6, 12

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976) ......................................................................... 9

*MiltlandRaleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993) ............................................................ 14

iv

*Morris v. Lifescan, Inc.*,
   54 Fed. App. 663 (9th Cir. 2003) ...................................................... 7, 8

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ..................................................... 4, 5, 6, 7

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ............................................................ 7

*Ratner v. Bennett*,
   1996 WL 243645 (E.D. Pa. May 8, 1996) ........................................... 7

*Ray v. Lundstrom*,
   2012 WL 5458425 (D. Neb. Nov. 8, 2012) .......................................... 7

*Schulte v. Fifth Third Bank*,
   2011 WL 3269340 (N.D. Ill. July 29, 2011) ....................................... 7

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................ 5

*Smith v. Dominion Bridge Corp.*,
   2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) ....................................... 7

*Thornberry v. Delta Air Lines*,
   676 F.2d 1240 (9th Cir. 1982) .......................................................... 15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................................... 5

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ............................................................. 4

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................... 9, 12

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ......................................................... 7

**Statutes**

15 U.S.C. § 78u-4(a)(6) ........................................................................ 6

15 U.S.C. §78u-4(a)(4) ....................................................................... 16

v

**Rules**

Federal Rule of Civil Procedure 23(e)........................................................................ 1

**Other Authorities**

Richard Posner, *Economic Analysis of Law*, §21.9 (3d ed.1986) ........................... 11

Lead Plaintiffs through their undersigned counsel, submit this memorandum of law in support of their Motion, pursuant to Federal Rule of Civil Procedure 23(e), for an Order: (1) awarding attorneys' fees of 28% of the Settlement fund, or $700,000 and an award to Lead Plaintiffs totaling $6,000 ($2,000 each); and (2) reimbursement of $421,689.87 in expenses that were incurred in prosecuting this Action (the "Fee Petition").

## I.  INTRODUCTION[1]

Through the efforts of Lead Plaintiffs' Counsel, as described more fully in the Rosen Declaration filed herewith ("Rosen Decl."), have achieved a substantial settlement consisting of a $2,500,000 cash payment.  Lead Plaintiffs' Counsel requests an award of fees in the amount 28% of the Settlement Fund or $700,000 and an award of $6,000, or $2,000 each to Lead Plaintiffs.  Lead Counsel also request reimbursement from the Settlement Fund of $421,689.872 in expenses.

The Settlement represents approximately 25.8% of Plaintiffs' best case estimate of damages for the Class. It is an excellent result, particularly when viewed in light of the considerable risks posed by continued litigation and uncertainty of proving liability and obtaining and collecting a larger judgment. *E.g.,* Rosen Decl., ¶¶ 34-39. This recovery is largely attributable to Lead Plaintiffs' Counsel's litigation efforts and Settling Defendants' offers to resolve this Litigation did not even approach the Settlement Amount until Lead Plaintiffs' Counsel had pursued this case to the eve of trial.  *E.g.*, Rosen Decl., ¶¶ 18, 21-24.

The reaction of the Class also strongly supports the requested fee.  The deadline to file objections to the Settlement is April 2, 2014, and the deadline to request exclusion from the settlement is March 24, 2014.  To date, one request for

---

[1]  Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation and Agreement of Settlement.

1

Lead Plaintiffs' Memorandum of Law in Support of An Award of Attorneys' Fees and Reimbursement of Expenses And Award to Lead Plaintiffs-No. CV-11-406-DOC (MLGx)

exclusion has been filed but it does not appear to be in compliance with the Court's January 31, 2014 Order because it failed to provide the purchase and sale transactions for Radient stock during the class period.  No objections to the settlement have been filed.  Declaration of Josephine Bravata Concerning Mailing of Pendency and Settlement of Class Action and Proof of Claim Release, attached as Ex. 1 to the Rosen Decl. ("Bravata Dec.") ¶¶ 9-10.  Pursuant to the Preliminary Approval Order, over 12,389 Notices were mailed to Class Members. *See* Bravata Dec., ¶ 6.  The Notice advised Class Members that Lead Plaintiffs' Counsel intended to apply to the Court for an award of attorneys' fees representing up to 30% of the Settlement Fund and an award to Lead Plaintiffs not to exceed $9,000, and that Lead Counsel would seek reimbursement of Plaintiffs' Counsel's out-of-pocket expenses not to exceed $480,000.  *E.g.*, Bravata Dec., Ex. A.

The fairness and reasonableness is confirmed when cross-checked with Lead Plaintiffs' Counsel's lodestar.  Plaintiffs' Counsel spent a total of 1,441.8 hours of professional time having a market value of approximately $788,955 in prosecuting this litigation, and results in a "negative" multiplier of 0.88—which is low compared to multipliers approved by Courts.

The Settlement could not have been achieved but for Lead Plaintiffs' and their counsel's persistent and extensive litigation of this matter.  While the parties engaged in frequent settlement negotiations, the amounts offered by Settling Defendants were not close the Settlement Amount, until this action was litigated to the eve of trial.

For the reasons set forth more fully below, Lead Plaintiffs' Counsel respectfully submit that such attorneys' fees and expenses are fair and reasonable under applicable legal standards and in light of the contingency risk undertaken, and should be awarded by the Court.

## II.   SPECIFIC EFFORTS OF LEAD PLAINTIFFS' COUNSEL

This brief description of the Litigation reveals not only the complexities of the case, but also the host of factual and legal issues that Lead Plaintiffs' Counsel had to convincingly address in order to achieve the Settlement.  As explained in the Rosen Declaration, the substantial work performed by Lead Plaintiffs' Counsel:

- reviewed and analyzed publicly available information about Radient including the Company's SEC filings, news articles, conference call transcripts, analyst reports, and stock trading data;
- consulted with and retained an experts relating to damages, loss causation, market efficiency, and clinical trials;
- filed the operative complaint and successfully opposed Defendants' motions to dismiss;
- obtained class certification;
- completed fact and expert discovery, which included the review of thousands of documents, and nine fact depositions and three expert depositions;
- successfully opposed Settling Defendants' motion for summary judgment;
- engaged in trial preparation;
- engaged in frequent settlement negotiations throughout the litigation, including an all-day mediation with retired Magistrate Judge Leo S. Papas; and
- negotiated and drafted the Stipulation of Settlement and Notice to class members.

Lead Plaintiffs' Counsel's effort to successfully resolve this Litigation has been without compensation of any kind, and payment of attorneys' fees and reimbursement of expenses were and always has been wholly contingent upon the result achieved.

As compensation for these efforts, Lead Counsel requests that this Court award attorneys' fees of 28% of the Settlement Fund ($700,000) plus $421,689.87 in unreimbursed expenses. Lead Plaintiffs' Counsel's 28% fee request is not only consistent with a great number of decisions, both in this Circuit and across the country, but is appropriate compensation for the result Counsel has obtained for the Class.

Finally, the Court should consider Class Members' reaction to the award sought.  12,389 Claim Packets, which included the detailed Notice and a Proof of Claim form, were mailed to potential members of the Settlement Class.  *See* Bravata Dec., ¶ 6.  The Notice advised Class members of the terms of this Settlement, the proposed attorneys' fees, award to lead plaintiffs, the expenses request, and of Class Members' right to object and/or opt out. The Class also was informed that Lead Plaintiffs' Counsel could apply for a fee of up to 30% of the settlement amount.  Bravata Dec., Ex. A.  The deadline to object or request exclusion is impending and to date, there have been no objections to the requested fee, and there has been one request for exclusion but it failed to address how many shares for which the exclusion accounted.  *See* Bravata Dec., ¶¶ 9-10; Rosen Dec. ¶ 27. For the reasons set forth herein, the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards.

## III.    REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES

### A. The Common Fund Doctrine

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir.

4

Lead Plaintiffs' Memorandum of Law in Support of An Award of Attorneys' Fees and Reimbursement of Expenses And Award to Lead Plaintiffs-No. CV-11-406-DOC (MLGx)

1989) ("*Paul, Johnson*"), the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad. & Banking Co. of Ga. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. [...]The amount of such a reward is that which is deemed "reasonable" under the circumstances.

(Emphasis in original; citations omitted).

The purpose of this "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

**B. The Percentage-of-Fund Approach**

In *Blum v. Stevenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-recovery method in common fund cases.

Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions. There are compelling reasons why so many courts have opted for the percentage approach in common fund cases. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are

5

Lead Plaintiffs' Memorandum of Law in Support of An Award of Attorneys' Fees and Reimbursement of Expenses And Award to Lead Plaintiffs-No. CV-11-406-DOC (MLGx)

customarily compensated by a percentage of the recovery.[3] Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time required under the circumstances.[4] Third, use of the percentage-of-recovery method decreases the burden imposed on the court (by avoiding a detailed and time-consuming lodestar analysis), while assuring that the beneficiaries do not experience unnecessary delay in receiving their share of the settlement. *See In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).[5]

Indeed, the plain text of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class.  *See* 15 U.S.C. § 78u-4(a)(6). *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n. 7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

## C. Courts In This Circuit Have Often Awarded 28% Or More Of The Common Fund As A Reasonable Fee

In *Paul, Johnson*, 886 F.2d at 273, the Ninth Circuit originally established 25% of the fund recovered as the "benchmark" award to be adjusted upward or

---

[3]  *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (noting that in the marketplace, attorneys and their clients routinely negotiate 25% to 40% percentage fees).

[4]  *See Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The lawyer gains only to the extent his client gains[,] ....ensur[ing] a reasonable proportion between the recovery and the fees assessed to the defendant . . . . reward[ing] exceptional success . . . penaliz[ing] failure . . . [and] automatically handl[ing] compensation for the uncertainty of litigation.").

[5]  *See also In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989) ("straight contingent fee awards [are] bereft of largely judgmental and time-wasting computations of lodestars and multipliers").

downward depending on the circumstances of the particular case. *Accord Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *but see Activision*, 723 F. Supp. at 1377-78 ("This court's review of recent reported cases discloses that nearly all common fund fee awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Indeed, it is not unusual for courts to award fee in excess of 30% in appropriate circumstances. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed. App. 663, 664 (9th Cir. 2003) (approving 33% fee); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million settlement).[6]

The guiding principle remains that a fee award should be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation omitted). The attorneys'

---

[6] Courts in other jurisdictions also routinely award fees in excess of 28% in similarly sized settlements. *E.g., In re Blech Sec. Litig.*, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) (awarding 33-1/3% of $2,795,000 settlement fund); *Berchin v. General Dynamics Corp.*, 1996 WL 465752, at * 2 (S.D.N.Y. Aug. 14, 1996) (33% of first $3 million); *In re StockerYale, Inc. Secs. Litig.*, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (33% of $3.4 million settlement fund); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *10 (E.D. Pa. Apr. 11, 2007) (33% of $750,000); *Schulte v. Fifth Third Bank*, 2011 WL 3269340, at *31 (N.D. Ill. July 29, 2011) ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33-1/3% of the settlement fund is within the reasonable range"; approving 33.3% of $9.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (one-third award of $40 million); *Ratner v. Bennett*, 1996 WL 243645 (E.D. Pa. May 8, 1996) (35% award in securities action of $400,000); *Faircloth v. Certified Fin. Inc.*, 2001 WL 527489, at *12 (E.D. La. May 16, 2001) (35% award of $1.534 million); *In re Select Comfort Corp. Secs. Litig.*, No. 99-884 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $ 5,750,000 settlement); *Ray v. Lundstrom*, 2012 WL 5458425, at *3-*4 (D. Neb. Nov. 8, 2012) (awarding 1/3 of $3.1 million settlement).

fee requested here is in line with the Ninth Circuit benchmark, and is well within the range of percentages courts in this Circuit have awarded in similar securities class action settlements.

## IV.   AN AWARD OF 28% OF THE SETTLEMENT FUND IS REASONABLE IN THIS CASE

### A. Counsel Achieved An Excellent Result For The Class

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *Morris*, 54 Fed. Appx. at 664 (district court, granting a 33% fee, noted that class counsel achieved exceptional results in a risky and complicated class action); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("[T]he amount of recovery and end result achieved are of primary importance, for these are the true benefit to the client").

The Settlement Fund created here consisting $2,500,000 (plus interest) is an excellent result. This amount, representing approximately 25.8% of the total plaintiffs maximum estimated damages or $9.675 million, as calculated by Plaintiffs' expert, (Rosen Decl., ¶ 24), is a significant recovery. The 25.8% recovery is 51% higher the median settlement value for cases of this size, which is 17%. *See* Ex. 3 to Rosen Decl., Dr. Renzo Comolli, Sukaina Klein, Ron Miller, and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review, at p. 32; *see, also, In re Cendant Corp. Sec. Litig.*, 109 F.Supp. 2d 235, 245 (D.N.J. 2000)(citing: (1) study of 377 securities class action settlements which found that the average settlement comprises between 9% and 14% of claimed damages and (2) cases which settled for 1.6% - 10% of claimed damages). These figures are based on the gross recovery in cases, before the deduction of attorneys' fees and expenses. *See also In re Cendant Corp. Litig.*,

264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses).

The Settlement provides Class Members with approximately 25.8% of Plaintiffs' estimated best possible result, assuming not only complete victory at trial and at the appellate levels, but Settling Defendants' unlimited resources for payment of a judgment. Counsel for Plaintiffs negotiated a settlement representing a percentage of the alleged loss that exceeded many of those above-referenced commendable settlements where the courts awarded even greater fees. Thus, the results achieved by Lead Plaintiffs' Counsel, in light of the legal and factual complexity and magnitude of this case and the significant difficulties of establishing both liability and damages, are adequate, justifying an award of 28%.

## B. The Risks Of The Litigation

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300; *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). That –as here–the case is "fraught with risk and recovery is far from certain" is a relevant circumstance which the Court must take into account. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

The risks of further litigation are also analyzed in connection with approval of the Settlement itself and will not be discussed at length herein.  The Court is respectfully referred to paragraphs ¶¶ 34-39 of the Rosen Declaration and to Lead Plaintiffs' Memorandum of Law in Support of  Final Approval of Class Action Settlement and Plan of Allocation.

In addition to the risks the Class faces *now*, however, *at time of filing*, Plaintiffs undertook additional risks. Plaintiffs' claims were subject to the PSLRA. As Judge Ellison observed in dismissing securities claims brought against BP

9

Lead Plaintiffs' Memorandum of Law in Support of An Award of Attorneys' Fees and Reimbursement of Expenses And Award to Lead Plaintiffs-No. CV-11-406-DOC (MLGx)

following the Deepwater Horizon disaster, "[t]he Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp.2 d 767, 820 (S.D. Tex. 2012). That this pleading standard *was* met was no guarantee that it *would be*.

### C. The Skill Required And The Quality And Efficiency Of The Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities" – particularly in securities class actions. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Here, the quality of Lead Plaintiffs' Counsel's work on this case is reflected in the excellent result obtained.  The standing and prior experience of Lead Plaintiffs' Counsel are relevant in determining fair compensation.  *See, e.g., Eltman v. Grandma Lee's Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986).  Lead Plaintiffs' Counsel's fee declaration includes a description of the background and experience of Plaintiffs' counsel. *See* Rosen Fee Decl., Ex. 2 to Rosen Decl.  As that submission demonstrates, Lead Plaintiffs' Counsel has extensive and significant experience in the highly specialized field of securities class action litigation.

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Plaintiff's Counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Plaintiffs were opposed in this litigation by nationally respected firms.  *See* Rosen Decl., ¶¶ 45-47.

At every stage of the proceedings, Lead Plaintiffs' Counsel had to perform with a high level of skill, efficiency, and professionalism. In the face of strong opposition from highly respected securities defense firms, Lead Plaintiffs'

10

Counsel assembled a case that survived Settling Defendants' numerous attacks. Moreover, Lead Plaintiffs evaluated the merits and risks presented, negotiated a very favorable amount for the Class, and settled the litigation on an excellent basis for the Class. Such quality, efficiency, and dedication should be rewarded.

### D. The Contingent Nature Of The Case And The Financial Burden Carried By The Lead Plaintiffs' Counsel

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.

*See* Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed.1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Lead Plaintiff's Counsel has received no compensation over the course of the three years that this action has been pending and has incurred significant expenses in litigating for the benefit of the Class. Any fee award or expense reimbursement to Lead Plaintiffs' Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award. *See* Rosen Decl., ¶¶ 48-54.

### E. The Customary Fee

If this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is

11

directly proportional to the recovery"); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"); *Kirchoff*, 786 F.2d at 323 (40% contractual award if case had gone to trial). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is even greater than the percentage-of-recovery fee requested in this case, Counsel's request is quite reasonable.

Lead Plaintiffs' Counsel's efforts were performed and the result was achieved on a wholly contingent basis, despite significant risk and in the face of determined opposition. Under these circumstances, it necessarily follows that Counsel is justly entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained. Under all of the circumstances present here, a 28% fee plus expenses is fair and reasonable.

### F.  A Lodestar Cross-Check Shows the Fee Request Is Reasonable

Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assur.*, 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F. 3d at 1050. Significantly, in securities class actions it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.[7]

---

[7]  *See In re Ravisent Sec. Litig.*, 2005 WL 906361, *12 (E.D. Pa. April 18, 2005) (fee represented a multiplier of 3.1 of the lodestar); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *16 (E.D. Pa. June 2, 2004) (noting that from 2001

12

Here, the total lodestar for the Rosen Law Firm, P.A. is $788,955.  *See* Rosen Decl., Ex. 2, ¶ 6.  Thus, counsel's fee request is equal to approximately 0.88 times the lodestar, which is low compared to multipliers approved by Courts. *See* Rosen Decl., ¶ 43. Thus, this factor supports the requested fee.

### G. The Reaction Of The Class Supports The Requested Award

Over 12,000 Claim Packets were mailed to potential Settlement Class Members and a Summary Notice was published on the *GlobeNewswire* and in the *Investor's Business Daily* and made available to the public on the Claims Administrator's website.  Bravata Dec., ¶¶ 6-7.  Settlement Class Members were informed in the Notice that Plaintiffs' Counsel would apply for attorneys' fees of up to 30% of the Settlement Fund, plus reimbursement of litigation costs and expenses not to exceed $480,000, plus interest, and were advised of their right to object to Lead Plaintiffs' Counsel's fee request.

To date, there has been one request for exclusion and no objections to the requested fee: one exclusion by Alpha Capital Anstalt, failed to provided how many shares it purchased of Radient.  *See* Bravata Dec., ¶¶ 9-10 & Ex. D thereto.

## V.   LEAD PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

through 2003, the average multiplier approved in common fund cases was 4.35); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150-51 (E.D. Pa. 2000) (lodestar of $1.2 million would require multiplier of 2.04 in order to match awarded fees of one-third of $7.3 million common fund); *In re Safety Components*, 166 F. Supp.2d 72, 103 (D.N.J. 2001) (lodestar of $534,000 would require multiplier of 2.81 in order to match awarded fees of $1.5 million); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, *7 (E.D.N.Y. Aug. 7, 1998) (fee represented a multiplier on the attorneys' lodestar of 1.67); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-27 (E.D.N.Y. 1993) (the equivalent of a 1.72 multiplier was applied to the attorneys' lodestar).

1    Lead Plaintiffs' Counsel's expenses are reasonable and were necessarily
2    incurred as a part of Counsel's efforts to achieve an excellent recovery for the
3    Class.   Plaintiffs' Counsel has incurred expenses in an aggregate amount of
4    $421,689.87 in prosecuting this litigation.

5        These expenses were necessary and vital to achieve the Settlement Amount.
6    It was not until the eve of trial, did Settling Defendants' settlement offers
7    approached the $2.5 million Settlement Amount.   This is not a situation where,
8    Defendants' offers to resolve this litigation decreased as the case progressed.
9    Rosen Decl. ¶ 7.

10       These expenses are detailed in the declaration of Counsel submitted to the
11   Court in support of this Motion. *See* Rosen Decl., ¶¶ 57-65, Ex. 2, ¶ 7.  The Notice
12   apprised the Class Members that Plaintiffs' Counsel would seek expenses in an
13   amount not to exceed $480,000.

14       The Court should approve Plaintiffs' request for reimbursement of Lead
15   Plaintiffs' Counsel's expenses. "Reimbursement of taxable costs [in class action
16   settlements] is governed by 28 U.S.C. § 1920 and Federal Rule of Civil procedure
17   54." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal.
18   2007). Courts interpreting these rules have found that counsel for the Class are
19   entitled to reimbursement for those types of out-of-pocket expenses that an
20   attorney would normally expect the client to pay. *Harris v. Marhoefer*, 24 F.3d 16,
21   19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees
22   those out-of-pocket expenses that `would normally be charged to a fee paying
23   client") (citation omitted); *see also Immune Response*, 497 F. Supp. 2d at 1177;
24   *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir.
25   1993) (expenses reimbursable if they would normally be billed to a client); *Abrams
26   v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *MiltlandRaleigh-
27   Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be

28

14

Lead Plaintiffs' Memorandum of Law in Support of An Award of Attorneys' Fees and Reimbursement of Expenses And Award to Lead Plaintiffs-No. CV-11-406-DOC (MLGx)

compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients") (citation omitted).

Counsel has pursued this litigation knowing that its expenses could only be reimbursed (without interest) if the Class won at trial or obtained a settlement. Rosen Decl. ¶ 48. Counsel has had no incentive to incur –and did not incur– unnecessary expenses. The categories of expenses for which counsel seek reimbursement are the type of expenses routinely charged to paying clients and, therefore, should be reimbursed out of the common fund.

Among the significant expenses incurred by Lead Plaintiffs' Counsel on behalf of the Class was the cost of retaining Lead Plaintiffs' financial and clinical trial experts, class notice expenses, mediation fees, and an expert deposition fee paid to depose the opposing party's expert– all of which was necessary for the successful prosecution and resolution of the Litigation on behalf of the Class. *Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177. Other expenses include the cost of computerized legal research using Westlaw, document hosting, Pacer, which should be (and are routinely) reimbursed. *In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*, 631 F.3d 913, 918-19 (8th Cir. 2011).

Other significant expenses involved travel, lodging and related meals for the mediation, a dozen depositions across the country, and meetings with Settling Defendants' counsel and Plaintiffs' experts. Where possible, Lead Plaintiff's Counsel participated in these matters by telephone or video conference, resulting in considerable savings of expense to the Class. Travel and lodging expenses were necessary to the prosecution of the action, were reasonable in amount and are properly charged against the fund created. *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983);

*Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177; *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

Similarly, photocopying and scanning costs associated with document retrieval and filing, ECF filings, and comparable costs are customarily reimbursed in common fund cases. *See Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177; *McDonnell Douglas*, 842 F. Supp. at 746.   Other expenses include providing notices to the Class pursuant to the PSLRA early notice provisions.

## VI.     THE AWARD TO CLASS REPRESENTTIVES SHOULD BE APPROVED

Lead Plaintiffs also request that the Court award them $6,000 ($2,000 each) in connection with their lost time in their representation of the Settlement Class. The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4). Lead Plaintiffs have diligently and completely fulfilled their obligations as representative plaintiff in the present action by: (1) reviewing the initial complaint and the amended complaints; (2) overseeing the litigation; (3) moving to be appointed class representatives and; (4) participating in discovery, including sitting for their depositions; and (5) communicating with counsel about the action.   Courts routinely award lead plaintiffs greater amounts. *E.g. In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 817 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 to lead plaintiff, $5,000 to class representatives); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the important policy role [lead

plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *In re Giant Interatice Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as an incentive and for lost time).

In short, an award of $2,000 to each of the three Lead Plaintiffs is warranted.

## VII.   **CONCLUSION**

Securities class actions are complex and laden with risk. There are numerous examples where Lead Plaintiffs' Counsel, in cases such as this, after the expenditure of thousands of hours, has received no compensation whatsoever. This complex litigation has been extremely hard-fought. From the beginning, Plaintiffs have been faced with determined adversaries represented by experienced and equally determined defense counsel. Without any assurance of success, Plaintiffs and their Counsel pursued this Litigation to an excellent conclusion. The Settlement represents a fair recovery on behalf of the class and reflects the skill and dedication of Plaintiffs' Counsel.   It is respectfully requested that the Court approve the fee and expense application and enter the Order submitted herewith awarding Plaintiffs' Counsel 28% of the Settlement Fund plus reimbursement of $421,689.87 of expenses, plus interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid, and an award of $6,000 to Lead Plaintiffs.

DATED: March 24, 2014                Respectfully submitted,


                              **THE ROSEN LAW FIRM P.A**.


                              /s/ Laurence M. Rosen
                              Laurence M. Rosen (SBN 219683)
                              Phillip Kim. (admitted *pro hac vice*)
                              355 South Grand Avenue, Suite 2450
                              Los Angeles, CA 90071

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com
pkim@rosenlegal.com

Lead Counsel for Lead Plaintiffs and the Class

**CERTIFICATE OF SERVICE**

I, Laurence Rosen, hereby declare under penalty of perjury as follows: I am attorney with the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA, 90071.  I am over the age of eighteen.

On March 24, 2014, I electronically filed the following **LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on March 24, 2014:

/s/ Laurence Rosen