THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen (SBN 219683)
Phillip Kim (admitted pro hac vice)
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
E-mail: lrosen@rosenlegal.com
E-mail: pkim@rosenlegal.com

Class counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| VINH NGUYEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>RADIENT PHARMACEUTICALS CORPORATION AND DOUGLAS C. MACLELLAN,<br>Defendants | CASE No.:CV-11-0406-DOC (MLGx)<br><br>**DECLARATION OF LAURENCE ROSEN IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND AWARD TO PLAINTFFS**<br><br>Judge: Hon. David O. Carter<br>Courtroom: 9D<br>Hearing Date: April 22, 2014<br>Hearing Time: 8:30 a.m. |

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses
And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

I, LAURENCE ROSEN DECLARE:

1. I am the managing attorney of the Rosen Law Firm, P.A., court-appointed Class Counsel in this Litigation. I submit this declaration in support of Lead Plaintiffs Reydel Quintana, Dat Tan Tran, and Agnes Cho's ("Lead Plaintiffs") Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Motion for Attorneys' Fee and Reimbursement of Expenses and Award to Plaintiffs, as set forth in the Stipulation and Agreement of Settlement (the "Settlement Agreement" or "Stipulation"), dated December 16, 2013 between the parties, as fair, reasonable and adequate. Radient Pharmaceuticals Corporation ("Radient" or the "Company") and Douglas C. MacLellan ("MacLellan") are collectively "Settling Defendants."

2. This action has been settled for a payment of $2,500,000 in cash (the "Settlement").

3. The purpose of this declaration is to set forth the basis for and background of the litigation of this action, its procedural history, and the negotiations that led to the proposed settlement.

4. Specifically, I submit this declaration in support of the proposed settlement that will resolve this litigation against the Defendants on behalf of all persons who purchased Radient common stock between January 18, 2011 through March 4, 2011, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are the Defendants, any members of Defendants' immediate families, any entity in which any Defendant has a controlling interest, directors and officers of Radient, and the affiliates, legal representatives, heirs, predecessors, successors and assigns of any such excluded party, and those persons who validly exclude themselves from this Litigation pursuant to the Preliminary Approval Order.

1

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

5. This declaration is also submitted in support of the plan of allocation of the settlement's proceeds to Class members (the "Plan of Allocation"), and in support of Lead Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of expenses and award to Plaintiffs.

6. The Settlement was reached only after Lead Plaintiffs' Counsel's aggressive and comprehensive prosecution efforts, for example: (a) reviewed and analyzed publicly available information about Radient including the Company's SEC filings, news articles, conference call transcripts, analyst reports, and stock trading data; (b) consulted with and retained an experts relating to damages, loss causation, market efficiency, and clinical trials; (c) filed the operative complaint, (d) successfully opposed Defendants' motions to dismiss; (e) obtained class certification; (f) completed fact and expert discovery, which included the review of thousands of documents, and nine fact depositions and three expert depositions; (g) successfully opposed Settling Defendants' motions for summary judgment; (h) engaged in trial preparation; (i) engaged in frequent settlement negotiations throughout the litigation, including an all-day mediation with retired Magistrate Judge Leo S. Papas; and (j) negotiated and drafted the Stipulation of Settlement and Notice to class members.

7. Though settlement negotiations were frequent, Settling Defendants' settlement offers did not approach the Settlement Amount until the eve of trial. Thus, the Litigation efforts in this case were reasonable and justified. Stated differently, had the case settled at earlier junctions in this case, the settlement would be a fraction of the Settlement Amount. Nor did Settling Defendants ever decrease their settlement offers as the case progressed. Therefore, the litigations efforts in this case were necessary to obtain the Settlement Amount.

2

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

8. On March 11, 2011, this action was filed in the United States District Court for the Central District of California against Radient Pharmaceuticals Corporation ("Radient"), Akio Ariura, and Douglas C. MacLellan (collectively, "Defendants"). The complaint charged each Defendant with violating Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and the individual defendants with violating Section 20(a) of the Exchange Act. The claims arise from a press release issued by Defendants on January 18, 2011 concerning clinical trials of Radient's drug Onko-Sure.

9. By Order dated June 6, 2011 the Court appointed Reydel Quintana, Dat Tan Tran, and Agnes Cho as Lead Plaintiffs; and approved their choice of The Rosen Law Firm, P.A. as Lead Counsel.

10. On July 8, 2011, Lead Plaintiffs filed an amended class action complaint alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC").

11. On August 5, 2011, Defendants filed a motion to dismiss the consolidated amended complaint. Defendants primarily moved to dismiss on the grounds that the complaint failed to plead: (a) heightened pleading requirements of Rule 9(b) and the PSLRA; (b) sufficient facts that the press release issued by Defendants was false or misleading; and (c) scienter in making allegedly false statements.

12. On October 20, 2011, Defendants' motion to dismiss the consolidated amended complaint was largely denied.

13. On December 1, 2011, Defendants answered the Complaint.

14. On March 23, 2012, Lead Plaintiffs filed a motion for class certification.

15. The Court granted Lead Plaintiffs' motion for class certification on November 26, 2012.

16. On April 1, 2013, Defendants filed a motion for summary judgment.

17. The Court handed down its decision on Defendants' motion for summary judgment on May 17, 2013. The Court granted Ariura's motion for summary judgment but denied Defendants Radient and MacLellan's motions.

18. On the eve of trial, the parties reached a settlement in late October 2013. After extensive negotiations on December 16, 2013 the parties signed the stipulation.

19. On December 17, 2013 the Plaintiffs filed their motion for preliminary approval of the Settlement.

20. On January 31, 2014, the Court issued the Preliminary Approval Order and set the final approval hearing for April 22, 2014 at 8:30 a.m.

## II. OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

21. On August 21, 2012 Lead Counsel and counsel for Settling Defendants met to engage in a mediation session before Honorable Leo Papas (Ret.).

22. The parties were not able to reach a settlement agreement at the mediation but the participation in the mediation advanced negotiations and aided the parties to eventually reach a settlement.

23. The parties continued negotiations throughout the case, but it was not until Plaintiffs pressed this case into trial preparation and on the eve of trial, did Settling Defendants' settlement offers approach the Settlement Amount. After agreeing in principle to settle this action in late October 2013, the parties

4

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

continued arm's-length negotiations concerning the specific terms and conditions of the settlement and documenting it. These efforts culminated in the filing of the Stipulation and preliminary approval papers with the Court in December 2013.

24. As set forth herein, and in the accompanying settlement brief, the settlement represents approximately 25.8% of maximum provable damages -- *should* all of the claims alleged survive at trial, *should* a jury adopt Lead Plaintiffs' expert's damages model, and *should* Radient and other Defendants have the ability to pay such a judgment. Radient common stock trades at a fraction of a penny and does not generate any material revenue. According to *Yahoo! Finance*, as of March 21, 2014, Radient's market capitalization is only $404,000 and its stock opened trading at $0.00010.[1] An immediate cash settlement that provides a substantial benefit in the face of these challenges – not to say anything of the appeals that would likely be filed should Plaintiffs prevail -- is a favorable outcome. In light of these circumstances, and especially when the settlement is the product of comprehensive legal and factual investigation, vigorous litigation, and arm's-length negotiations by experienced counsel, there is ample support for a finding that the Settlement is fair, reasonable and adequate.

25. For creating this substantial benefit, Lead Plaintiffs' Counsel request a fee of 28% of the Settlement Fund plus interest earned thereon, and reimbursement of litigation expenses. Here, the total lodestar or value of legal services performed by Lead Plaintiffs' Counsel in the Litigation is $788,955. Counsels' fee request is equal to about .88 lodestar multiplier—which is on the low range of multipliers approved by Courts and represents less than what counsel would have been paid by the market, had this action been an hourly case.

---

1 http://finance.yahoo.com/q?s=rxpc&ql=1 (last checked March 21, 2014, 8:22 a.m. PST).

5

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

1  Therefore, as set forth in the fee brief filed herewith, this "negative" multiplier
2  further supports the reasonableness and fairness of the requested fee.

3  26. Further, as set forth in the fee brief, Lead Plaintiffs' Counsel's
4  requested 28% fee is also within the reasonable range of percentages typically
5  awarded in securities class actions in the Ninth Circuit.

6  27. The favorable reaction of the members of the Class also supports the
7  reasonableness of the Settlement and the fee request. The date for filing
8  objections to the Settlement is April 2, 2014. The date for filing requests for
9  exclusion is March 24, 2014. To date, there have been only one request for
10  exclusion and no objections to the Settlement. *See* Declaration of Josephine
11  Bravata (the "Bravata Dec.", attached hereto as Exhibit 1), ¶¶ 9-10.

### III. CLASS NOTICE

28. Pursuant to the Preliminary Approval Order, Summary Notice of the Settlement was published on *GlobeNewswire* and in *Investor's Business Daily* on February 12, 2014 by Strategic Claims Services ("SCS" or the "Claims Administrator") and a copy of the Notice and Claim Form was made available to the public on SCS's website. *See* Bravata Dec., ¶ 7. SCS additionally mailed, by first class mail, the Notice Claim form approved by the Court to all individuals and organizations identified by Radient's transfer agent, and individuals identified by nominee accounts held by major brokerages and institutional groups. *See id.,* at ¶¶ 4-6.

29. To date, 12,389 notices and claim forms have been mailed. *See id.,* ¶ 6.

30. The deadline to file objections to the Settlement is April 2, 2014, and the deadline to request exclusion from the settlement is March 24, 2014. To date, there have been one request for exclusion and no objections. *See* Bravata Dec., ¶¶ 9-10.

6

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses
And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

## IV. PLAN OF ALLOCATION

31. Pursuant to the Preliminary Approval Order, the proposed Plan of Allocation was fully described in the Notice sent to the Class, on pages three to six. *See* Bravata Dec., Ex. A. The proposed Plan of Allocation was formulated by Lead Plaintiffs' Counsel, in consultation with a financial consultant , with the goal of reimbursing Class members in a fair and reasonable manner.

32. If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Class members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Plaintiffs' Counsel will determine each claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Net Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

33. The Plan of Allocation is tailored to equitably compensate the losses of the Class members and is based upon time periods during the Class Period when various corrective disclosures occurred consistent with loss causation principles of *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005).

## V. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

34. Lead Plaintiffs' Counsel, experienced securities class action attorneys, evaluated the prospects of obtaining a better result at trial, one that would withstand later attack. The following factors were taken into consideration in determining that the Settlement is reasonable, fair and adequate.

7

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses
And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

35. Plaintiffs were confident with their prospects at trial, but there is no guarantee that Lead Plaintiffs' claims would survive at trial or the appellate process. No one can accurately predict how witness would present in front of a jury and how the jury will react. Settling Defendants had colorable arguments that there was a "clinical trial" or Onko-Sure that involved some Mayo Clinic personnel, thus, thus could support Defendants' contention that they did not act with scienter in claiming a Mayo Clinic clinical trial. A jury might find that this conduct was more akin to gross negligence rather than scienter, i.e. knowing conduct or deliberate recklessness. It is inherently difficult to predict how a jury would assess the credibility of Settling Defendants' contentions and witnesses in support of their defenses.

36. As to damages, this issue would be resolved through a "battle of the experts" against the parties competing damages models. Again, it would be difficult to predict which expert the fact finder would credit. Lead Plaintiffs' best case scenario, as estimated by Plaintiffs' damages expert, determined class-wide damages of approximately $9.675 million. Settling Defendants through their expert, however, would argue that (a) this number was not accurate, and (b) the vast majority of the damages are attributable to factors other than the revelation of the false statements Settling Defendants made.

37. Similarly, the risks inherent in trying to prove the various elements of the claims alleged have been increased by the ever-changing legal landscape in the area of securities class actions.[2] For example, the Supreme Court is currently considering the fraud-on-the-market presumption of reliance and its ruling may

---

2 *E.g., Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 153 (2008); *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2299 (2011); *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011).

8

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

1  impact how plaintiffs can invoke it. *Halliburton Co. v. Erica P. John Fund, Inc.*,
2  No. 13-317. It is relevant in this case, as Plaintiffs have invoked the fraud-on-the-
3  market presumption of reliance, and the Supreme Court's decision on that case
4  may create additional costly litigation in this action.

5  38. There is also a material risk that Radient could become bankrupt. As
6  noted above, Radient's market capitalization is only $404,000 and stock price is
7  $0.00010. The Settlement eliminates the risk that Plaintiffs could receive no
8  recovery.

9  39. Thus, there are significant risks to the continuation of this Litigation.
10 In view of the Company's strained financial condition, the Settlement, which
11 offers an immediate and definite cash benefit to Class members, is clearly
12 preferable to continued and protracted litigation.

## VI. THE FEE APPLICATION

15 40. The Notice informed Class Members of Lead Plaintiffs' Counsel's
16 intent to apply for an award of attorneys' fees in an amount not to exceed 30% of
17 the Settlement Fund, plus interest, and for reimbursement of counsel's litigation
18 expenses. Lead Plaintiffs' Counsel is applying for an award of attorneys' fees of
19 28%. As set forth in Lead Plaintiffs' fee brief, 28% of the common fund created
20 by the efforts of counsel is a benchmark in the Ninth Circuit.

21 41. Lead Plaintiffs' Counsel achieved a favorable result for the Class at
22 risk and expense to themselves. Throughout this litigation, Lead Plaintiffs'
23 Counsel were committed to the interests of the Class, and invested the time and
24 resources necessary to resolve the Class' claims and attain the Settlement Amount.
25 Moreover, Lead Plaintiffs' Counsel took this case on a contingency basis, with no
26 assurance of success.

9

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

*Plaintiffs' Counsel's Work and Expertise*

42. The total number of hours expended by professionals employed by Lead Plaintiffs' Counsel is 1,441.8 hours. This number is derived from the contemporaneous time records regularly maintained by Lead Plaintiffs' Counsel. A listing of the professionals at The Rosen Law Firm who worked on this matter, the number of hours spent by each such professional, and their hourly rates, is set forth in detail in the Declaration of Laurence Rosen Concerning Fees and Expenses ("Rosen Fee Decl.") at ¶ 5, attached hereto as Exhibit 2. The total value of the services performed in this case by The Rosen Law Firm, based upon current rates, is $788,955.

43. An award of 28% of the Settlement would equal $700,000, and results in a .88 lodestar multiplier. A .88 multiplier is low when compared to other multipliers approved by Courts.

44. Counsel are experienced and skilled practitioners in the securities litigation field, and have a successful track record in such securities and other complex class action cases, as reflected in the firm resume. *See* Firm Resume attached as Exhibit A to Rosen Fee Decl.

*Standing and Caliber of Opposing Counsel*

45. The quality of the work performed by Lead Plaintiffs' Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.

46. Plaintiffs were opposed in this litigation by attorneys from DLA Piper LLP and Hunter Taubman Weiss LLP, firms that are highly experienced in securities litigation.

47. In the face of this knowledgeable and well-financed opposition, Lead Plaintiffs were nevertheless able to develop a case that was sufficiently strong to

10

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

persuade the Settling Defendants to settle it on terms that were favorable to the Class.

*The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk, Contingent Securities Cases*

48. This prosecution was undertaken by Lead Plaintiffs' Counsel entirely on a contingent fee basis. The risks assumed by counsel in bringing these claims to a successful conclusion are described above and in the settlement brief.

49. Those risks are also relevant to an award of attorneys' fees. Here, the risks assumed by Lead Plaintiffs' Counsel, and the time and expenses incurred without any payment, were extensive and are described in detail above and in the accompanying fee brief.

50. From the outset, Lead Plaintiffs' Counsel understood that they were embarking on a complex, expensive and probably lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead Plaintiffs' Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of this litigation, and that funds were available to compensate staff and to cover the considerable out-of-pocket costs that a case such as this one requires.

51. With an average lag time of a few years for securities class actions to conclude, the financial burden on contingent fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Plaintiffs' Counsel has received no compensation during the course of this litigation and has incurred $421,689.87 in out-of-pocket expenses in prosecuting this action for the benefit of the Class. These expenses were necessary in order to achieve the Settlement Amount. Indeed, it was not until trial preparation was underway and on the eve of

11

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

trial, did Settling Defendants' settlement offers approach the Settlement Amount. Simply, had the case settled earlier in the proceedings, the settlement would be a fraction of the Settlement Amount.

52. Counsel also bore the risk that no recovery would be achieved. As discussed herein and in the settlement brief, from the outset, this case presented a number of risks and uncertainties that, at any juncture, could have prevented recovery. Success in contingent fee litigations is never assured.

53. The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

54. As a result of extensive and persistent efforts in the face of substantial risks and uncertainties, Lead Plaintiff's Counsel achieved a significant recovery for the benefit of the Class. In circumstances such as these, and in consideration of Lead Counsel's hard work and the favorable result achieved, the requested 28% fee, representing a multiplier of .88 is reasonable and should be approved.

***The Reaction of the Class to the Requested Fee***

55. As set forth above, 12,389 Claim Packets have been mailed to potential Class Members. The Notice advised Class Members that Plaintiffs' Counsel would apply for an award of attorneys' fees not to exceed 30% of the Settlement Fund (plus interest). Additionally, a summary notice was published on *GlobeNewswire* and in *Investor's Business Daily* on February 12, 2014. Bravata Dec., ¶ 7, Ex. D.

56. To date, there has been one request for exclusion but it does not appear to comply with the Court's January 31, 2014 Order and no objections to

12

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

the Settlement have been received. The objection deadline is April 2, 2014 and exclusion deadline is March 24, 2014. *See* Bravata Dec., ¶¶ 9-10.

## VII. REIMBURSEMENT OF THE REQUESTED EXPENSES IS FAIR AND REASONABLE

57. Lead Plaintiffs' Counsel has incurred $421,689.87 in litigation expenses reasonably and actually incurred by Lead Plaintiff's Counsel in connection with the commencing and prosecuting the claims against Settling Defendants.

58. From the beginning of the case, Lead Plaintiffs' Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Lead Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

59. A listing of the expenses incurred by the Rosen Law Firm from the regularly maintained records, are set forth in the Rosen Fee Decl., ¶ 7 (attached as Exhibit 2 hereto).

60. The expenses incurred pertaining to this case are reflected in the books and records of Lead Plaintiffs' Counsel. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court. For the Court's convenience, copies of large expense invoices are provided as Exhibit B to the Rosen Fee Decl.

61. The litigation expenses for which Lead Plaintiffs' Counsel seek reimbursement were largely incurred for professional expert and consultant fees

13

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

1 such as the services of a financial expert for damages and market efficiency, a clinical trial expert, and mediation fees.

62. The other expenses for which Lead Plaintiffs' Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. Those expenses include, among others, telephone conferencing and facsimile charges, postage and delivery expenses, filing fees, computerized research (e.g., Westlaw), photocopying and scanning, document hosting, and traveling, lodging and meals.

63. In addition, Lead Plaintiffs' Counsel incurred expenses related to depositions, including a Spanish language interpreter for Mr. Quintana's deposition, transcript fees, and fees paid to Defendants' expert for his deposition.

64. All of the litigation expenses incurred were necessary to the successful prosecution and resolution of the claims against Settling Defendants.

65. In light of the inherently complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class. Accordingly, Lead Plaintiffs' Counsel respectfully submit that the expenses incurred are reasonable in amount.

## VIII. A NOMINAL AWARD TO LEAD PLAINTIFF IS WARRANTED

66. Lead Plaintiffs and also seek an award for their own lost time and effort in prosecution and oversight of this action pursuant to the PSLRA, in the amount of $6,000 distributed accordingly: Reydel Quintana, $2,000; Dat Tan Tran, $2,000; and Agnes Cho, $2,000

67. The Notice stated that Lead Plaintiffs would seek an award up to $9,000.

14

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)

68. As explained in the fee brief, awards of greater magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that lead plaintiffs, through loss of time and risk undertaken, are not made *worse* off for their service to the class.

69. Lead Plaintiffs have been materially involved in this action, having responded to discovery, producing documents, being involved in deposition discovery, and communicating with counsel during this action about the case and case strategies. Lead Plaintiffs should be awarded for their efforts and lost time in prosecuting this action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed: March 24, 2014

_____
Laurence Rosen
The Rosen Law Firm, P.A.

# CERTIFICATE OF SERVICE

I, Laurence Rosen, hereby declare under penalty of perjury as follows:

I am attorney with the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA, 90071.  I am over the age of eighteen.

On March 24, 2014, I electronically filed the following **DECLARATION OF LAURENCE ROSEN IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on March 24, 2014

/s/ Laurence Rosen

16

Declaration of Laurence Rosen In Support of Final Approval, Plan of Allocation, and Award of Attorneys' Fees and Expenses And Award to Plaintiffs- No. CV-11-406-DOC (MLGx)